No. 92-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DEBRA OKLAND, as Guardian Ad Litem
for BERNIE OKLAND, a minor,

       Plaintiff and Respondent,

v.

KEITH DAVID WOLF,

       Defendant and Appellant.

FILED

APR 15 1993

~~Ed~~ Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Paul C. Meismer, Anita Harper Poe, Garlington,
Lohn & Robinson, Missoula, Montana

      For Respondent:

          Edward K. Duckworth, Attorney at Law,
Ronan, Montana

Submitted on Briefs:  August 20, 1992

Decided:  April 15, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff brought this action on behalf of her eight-year-old son, Bernie Okland, for injuries sustained when the bicycle he was operating collided with the vehicle being driven by defendant Keith David Wolf. The jury returned a verdict, finding that both Wolf and Okland were negligent and that each was 50 percent responsible for the collision. The jury found that the reasonable amount of Okland's damages was $40,000. Pursuant to the jury's finding of comparative fault, the District Court entered judgment for plaintiff in the amount of $20,000, plus costs and statutory interest from the date of judgment. From this judgment, defendant appeals. We affirm the District Court.

The issues raised by defendant on appeal are:

1. Was there substantial evidence to support the jury's verdict?

2. Was defendant entitled to judgment as a matter of law based on our decision in *Olson v. Parchen* (1991), 249 Mont. 342, 816 P.2d 423?

3. Was defendant entitled to a new trial because of an erroneous instruction given to the jury by the District Court?

4. Was defendant entitled to a new trial based upon improper closing argument by plaintiff's attorney?

                    FACTUAL BACKGROUND

On July 3, 1990, eight-year-old Bernie Okland was operating his bicycle in a westerly direction in the alley between 13th Avenue and 12th Avenue in Polson. As he approached the alley's

2

intersection with 7th Street, he intended to make a right-hand turn and proceed in a northerly direction. However, he was traveling too fast, could not control his bicycle, and swerved into the southbound lane, where he collided with defendant Keith David Wolf's vehicle.

Defendant was 15 years old at the time of his collision with Okland. He had received his driver's license 30 days prior to the accident. Immediately before the collision, he was proceeding in a southerly direction on 7th Street and conversing with his friend, who was a passenger in the vehicle. According to all witnesses, he was operating his vehicle at a speed of between 20 and 25 miles an hour, which was within the legal speed limit. He testified that he did not observe Okland until an instant before the collision. There was no evidence that defendant applied his brakes or swerved to take evasive action prior to the collision.

As a result of Okland's collision with defendant, he sustained physical injuries and incurred medical expenses.

On January 10, 1991, plaintiff filed an amended complaint alleging that the collision in which her son was injured was caused by defendant's negligence. In his answer, defendant admitted that the collision occurred, but denied that it was his fault and alleged that it was caused entirely by the negligence of Okland.

The principals involved in the collision were deposed, as were the investigating officer and an off-duty officer who witnessed the collision. Based on the testimony of these witnesses, defendant moved the District Court prior to trial to enter summary judgment

3

holding that as a matter of law the collision in which Okland was injured was caused solely by his own negligence. That motion was denied by the District Court, and this case proceeded to trial before a jury of 12 people on December 18, 1991. On December 19, the jury returned its verdict, finding both parties negligent and apportioning responsibility for the collision equally between them. The jury found that the total amount of damage sustained by Okland as a result of his collision with defendant was $40,000.

Further facts will be discussed as necessary in the discussion of the issues raised by defendant.

I

Was there substantial evidence to support the jury's verdict?

Defendant contends that the District Court erred when it denied his motions for summary judgment, a directed verdict, and judgment notwithstanding the verdict.

In reviewing a denial of a motion for summary judgment, our scope of review is basically the same as when reviewing denial of defendant's motion for a directed verdict. *Doll v. Major Muffler Centers, Inc.* (1984), 208 Mont. 401, 416, 687 P.2d 48, 56.

Our scope of review from denial of a motion for a directed verdict is the same as from denial of a motion for judgment notwithstanding the verdict. *Nelson v. Flathead Valley Transit* (1992), 251 Mont. 269, 274, 824 P.2d 263, 267.

In *Nelson*, we explained the scope of review from an order denying a motion for judgment notwithstanding the verdict as follows:

> In considering a motion for judgment notwithstanding the verdict, the court must view all of the evidence in a light most favorable to the non-moving party. *Nicholson v. United Pacific Insurance Company* (1985), 219 Mont. 32, 710 P.2d 1342. The motion may only be granted if it appears that the non-moving party cannot recover upon any view of the evidence, including legitimate inferences to be drawn from it. *Larson v. K-Mart Corporation* (1990), 241 Mont. 428, 787 P.2d 361.

*Nelson*, 824 P.2d at 265.

In *Simchuk v. Angel Island Community Association* (1992), 253 Mont. 221, 228-29, 833 P.2d 158, 162-63, we stated:

> We recently discussed our function in reviewing jury verdicts. See *Silvis v. Hobbs* (Mont. 1992), [251 Mont. 407,] 824 P.2d 1013, 49 St. Rep. 62. It is not the function of this Court to agree or disagree with the jury's verdict. Our function is to determine whether substantial evidence existed to support the verdict. In our examination, we review the facts in the light most favorable to the prevailing parties. If conflicting evidence exists, the credibility and weight given to the evidence is in the jury's province and we will not disturb the jury's findings unless they are inherently impossible to believe. *Silvis*, 824 P.2d at 1015-16, 49 St. Rep. at 63-64. Our job is complete once we find substantial evidence in the record to support the jury's conclusion.

With that scope of review in mind, we conclude that the following substantial evidence supports the jury's verdict:

The street on which this accident occurred was the main artery from downtown Polson to the location of defendant's residence. Prior to the date on which the accident occurred, defendant had passed the intersection of the alley with 7th Street hundreds or

5

thousands of times. The intersection is located in a residential area with homes on both sides of the street. Defendant was aware that it was common for children to be playing and biking in the area. He was also aware that because of the presence of children in the area, it was important to keep a lookout on both sides of the road. He acknowledged that he knew from the driver's education course he had just completed that drivers need to be especially alert for children because they are unpredictable and you never know what they are going to do.

Defendant admitted that as he proceeded south on 7th Street he would have been able to see a substantial part of the alley where Okland was operating his bicycle, but testified that he and the passenger in his vehicle were chatting and that he did not see the bicycle until it was too late to take evasive action. He admitted that if he had looked in the direction of the alley and seen Okland coming, he could have either slowed down, braked, or swerved.

Rick Hunter testified that he is employed as a detective by the Polson Police Department. He was off duty at the time of the accident. However, he witnessed the accident as a passenger in a third vehicle.

The vehicle in which Hunter was traveling was proceeding in an easterly direction on 12th Avenue. His position was about one-half block north of the intersection of the alley and 7th Street. He was significantly further away from the alley than defendant. However, from that vantage point he was able to observe Okland operating his bicycle in a westerly direction in the alley. He

noticed that Okland did not have control of his bicycle. The bike was wobbling as if its rider was trying to make a turn, but was unable to do so. He was able to make these observations and conclude that a collision was going to occur from one-half block away. He testified that about two to three seconds passed from the point when he first saw Okland until the impact occurred. He had time to yell to the driver of his vehicle that there was going to be an accident. During that time, he did not see defendant make any effort to swerve. He did not see any brake lights applied, and he did not see any indication that defendant had observed the bicycle.

Hunter also testified that he was familiar with the area where the accident occurred and that it is a thickly populated area where, on a summer evening, it was common to see children on bikes and pedestrians out walking. He testified that a driver in that area should certainly plan on children being present and take appropriate precautions. He stated that when he drives in that area, he scans both sides of the road as a precaution.

Denman Lee, Ph.D., is a physics professor at Montana State University and an accident reconstruction expert. He testified, without objection by defendant, regarding his qualifications. Lee investigated the accident to determine defendant's sight distances as he proceeded in a southerly direction on 7th Street, and he determined how long Okland's bicycle should have been visible to defendant prior to the point where the collision occurred. He testified that, based upon the speed at which he concluded the

7

bicycle was traveling, defendant would have been able to observe the bicycle for at least 4 seconds prior to the collision if he had been driving at a speed of 20 miles per hour, and 3.6 seconds prior to the collision if he had been driving at a speed of 25 miles per hour. Lee also testified that including reaction time, it would have taken defendant approximately 2.3 seconds to bring his vehicle to a complete stop from a speed of 20 miles per hour, and 2.6 seconds to bring his vehicle to a complete stop from a speed of 25 miles per hour. In summary, he concluded that if defendant had seen what was there to be seen, he could have brought his vehicle to a complete stop prior to colliding with Okland's bicycle.

The District Court properly instructed the jury that:

> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.

In *Payne v. Sorenson* (1979), 183 Mont. 323, 599 P.2d 362, we held that:

> Under Montana law, a motorist has a duty to look not only straight ahead but laterally ahead as well and to see that which is in plain sight. Furthermore, a motorist is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view. *Nissen v. Johnson* (1959), 135 Mont. 329, 333, 339 P.2d 651, 653; *Sorrells v. Ryan* (1955), 129 Mont. 29, 281 P.2d 1028; *Koppang v. Sevier* (1938), 106 Mont. 79, 75 P.2d 790. If a motorist does not keep a proper lookout, a jury may find him negligent.

*Payne*, 599 P.2d at 364.

We conclude that under these circumstances there was sufficient evidence, when construed most favorably for the

8

prevailing party, to support the jury's finding that defendant was negligent by failing to keep a proper lookout and have his vehicle under sufficient control to avoid his collision with plaintiff's son.

Defendant also contends that even if there was evidence to support a finding that defendant was negligent, the District Court should have concluded that Okland's negligence was greater than defendant's as a matter of law. In support of this contention, defendant cites numerous statutes which he contends Okland violated by the manner in which he operated his bicycle. However, we find the circumstances in this case similar to those in *Dillard v. Doe* (1992), 251 Mont. 379, 824 P.2d 1016, where we recently held that when there is evidence of negligence by both parties, the respective degree of each party's negligence is not normally susceptible to apportionment as a matter of law.

In *Dillard*, the plaintiff was walking along the highway in darkness, wind, and snow when he was struck by a snowplow. He sued the State of Montana based on the alleged negligence of the snowplow operator. The district court granted summary judgment to the State based on its conclusion that the plaintiff was negligent as a matter of law and that even if the snowplow operator was negligent, reasonable minds could not differ on whether the plaintiff's negligence exceeded that of the defendant. In reversing the judgment of the district court, we pointed out that:

> Ordinarily, issues of negligence are questions of fact not susceptible to summary adjudication. *Brohman v.*

9

*State* (1988), 230 Mont. 198, 201, 749 P.2d 67, 69. Liability should not be adjudicated upon a motion for summary judgment where factual issues concerning negligence and causation are presented. *Duchesneau v. Silver Bow County* (1971), 158 Mont. 369, 377, 492 P.2d 926, 931.

*Dillard*, 824 P.2d at 1018-19.

We also relied on *Reed v. Little* (1984), 209 Mont. 199, 206-07, 680 P.2d 937, 940-41, where we held that where there is evidence that one party to a lawsuit violated highway traffic statutes, and also evidence of negligence on the part of the other party, it is up to the jury to weigh and compare the negligence of both parties in reaching its verdict. Likewise, in this case, we hold that where there was evidence of negligence on the part of both parties, it was for the fact finder to determine the comparative degree of negligence. The District Court did not err by submitting the issue of comparative negligence to the jury.

II

Was defendant entitled to judgment as a matter of law based on our decision in *Olson v. Parchen* (1991), 249 Mont. 342, 816 P.2d 423?

Defendant contends that since he was operating his vehicle in his own lane of travel at a lawful speed, his only act or omission which contributed to the collision was his failure to anticipate that plaintiff would violate the law. His argument continues that since we held in *Olson* that it is not negligent to fail to anticipate the negligence of another, defendant was not negligent in this case. However, the facts in *Olson* are distinguishable from

10

the facts in this case and we conclude that plaintiff's recovery is not barred by *Olson*.

In *Olson*, the plaintiff, who was the favored driver, collided with the defendant in a Great Falls intersection when the defendant failed to yield the right-of-way. We held that the plaintiff was not negligent for failing to anticipate that the defendant would not yield to him. The difference in that case was that the plaintiff actually observed the defendant shortly prior to the collision and saw nothing that would indicate that defendant would not stop. There was no suggestion that the defendant's vehicle was out of control. The plaintiff then did the responsible thing, which was to look for traffic coming from the opposite direction. When he looked back in the defendant's direction, the collision was unavoidable. We noted that:

> Olson said that he saw Parchen's pickup truck, but thought Parchen was going to stop and looked away momentarily. A driver of a vehicle traveling on a street protected by a "yield" sign has a right to rely upon the compliance of the driver of a vehicle which must yield with the yield right-of-way statutes. Olson cannot be contributorily negligent because his alleged failure to see Parchen's vehicle entering the intersection was not the proximate cause of the collision.

*Olson*, 816 P.2d at 427.

In this case, defendant did not see Okland because he did not keep the lookout which we have held is required by law. If he had observed Okland prior to the collision, he would have noted, as did Officer Hunter, that Okland's bicycle was out of control and that there was no way he would be able to bring it to a stop at the

11

intersection, or keep it in his own lane of travel. Under those circumstances, it would not have been reasonable for defendant to presume that Okland would comply with the rules of the road.

In *Olson*, the plaintiff observed the defendant at the appropriate time and had no reason to believe he would not comply with the law. In this case, defendant failed to observe Okland at any time; if he had, he would have been aware that he was not in sufficient control to comply with the law. For these reasons, we conclude that *Olson* is not applicable to the facts in this case and does not bar judgment for plaintiff.

### III

Was defendant entitled to a new trial because of an erroneous instruction given to the jury by the District Court?

Included among the original jury instructions proposed by plaintiff was Plaintiff's Proposed Instruction No. 28. It read as follows:

> It does not follow, merely because a party to this action has violated some statutory provision that you must find him to have been negligent. This is only evidence to be considered in determining whether there was negligence.

During the settlement of instructions, that instruction was withdrawn by plaintiff. Defendant contends on appeal that he objected to the instruction. However, there is no record of any objection in the transcript provided to this Court.

Somehow, the withdrawn instruction was included with the court's instructions which were read to the jury. After the court

12

concluded reading those instructions, counsel for defendant asked to approach the bench where a discussion off the record was conducted. Following that discussion, the District Court Judge reported to the jury that he had inadvertently included Instruction No. 28 and that the attorneys had stipulated that it should be removed from the instructions. Both attorneys so stipulated.

There is no further record of any objection to the procedure followed by the court, nor is there any indication in the record that defendant requested any relief, such as a mistrial or further clarification, based upon the District Court's inadvertent reading of the objectionable instruction.

The District Court did give correct instructions to the jury regarding the effect of a statutory violation. Furthermore, counsel for defendant clarified the error during closing argument when he stated that:

> A violation of a law in the State of Montana isn't _evidence_ of negligence. _It is negligence_. The instruction the judge read, if you find from the evidence that the defendant or the plaintiff violated the law just read to you, you're instructed that such conduct was negligence as a matter of law. It is negligence. [Emphasis added.]

The objectionable instruction was removed from those instructions which were submitted to the jury and was not sent to the jury room.

However, on appeal defendant contends that since the inadvertent instruction was a misstatement of the law, defendant was prejudiced when it was read and on that basis the verdict for plaintiff should be reversed.

While it does appear that the defense objected to the inadvertent reading of the incorrect instruction, it does not appear from the record that defendant had any objection to the solution that was arrived at by the District Court for dealing with the mistake. These circumstances are similar to those presented in *Rasmussen v. Sibert* (1969), 153 Mont. 286, 456 P.2d 835, where we held that the defendant waived any prejudice resulting from the mention of insurance by failing to request the appropriate relief prior to entry of the jury verdict. In that case, there was discussion outside the presence of the jury regarding the remark and no specific relief was requested by the defendant until after trial. The district court then granted a new trial based upon the prejudicial remark. We reversed the district court for the following reason:

> Here there was no objection or motion to strike the testimony, no request for admonition by the court, no motion for mistrial, and no request for a corrective jury instruction. Briefly stated, defendant did nothing. In so doing defendant took a calculated risk. He knew the words had been uttered. He knew that no issue had been raised thereon. He knew that the jury had not been admonished or instructed to disregard this testimony; and he knew that his case was being submitted to the jury on this basis. Under these circumstances, defendant's failure to object or request corrective action constituted a waiver of objection on this issue. It cannot be urged for this first time upon motion for a new trial following an adverse jury verdict. To hold otherwise would not only put the trial court in error on an issue which had not been presented to it for ruling, but would permit a litigant to submit his case to the jury for a possible verdict in his favor, and in the event he was unsuccessful, would permit him another determination by another jury. [Citations omitted.]

*Rasmussen*, 456 P.2d at 840.

14

Likewise, in this case, defendant did not move for a mistrial or other corrective action. He chose to submit his case to the jury based on the posture that it was in. He is, therefore, precluded from requesting relief in the nature of a mistrial for the first time on appeal after receiving a verdict from the jury that he considers adverse.

We conclude that the District Court did not err when it denied defendant's motion for judgment notwithstanding the verdict based upon the inadvertent instruction which was read to the jury.

IV

Was defendant entitled to a new trial based upon improper closing argument by plaintiff's attorney?

On appeal, defendant contends that by discussing Okland's age during closing argument, plaintiff's attorney invited the jury to ignore the law and base its decision on sympathy, rather than the appropriate standard of care. However, there is no indication in the record that defendant ever objected to any remarks made by plaintiff's attorney, nor is there any indication in the record that defendant ever requested other relief or corrective action from the District Court as a result of those remarks. For the same reasons discussed in the previous issue of this opinion, defendant is not permitted to raise this issue for the first time on appeal.

For the above reasons, the judgment of the District Court is affirmed.

_____
Justice

15

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16

Justice John Conway Harrison dissenting.

I dissent. On the four issues presented by the appellant on appeal, I would find as to Issue 1 that there was not substantial evidence to support the jury's verdict; as to Issue 2, that the defendant was entitled to a judgment as a matter of law, based on our decision in Olson v. Parchen (1991), 249 Mont. 342, 816 P.2d 423; as to Issue 3, that the defendant is entitled to a new trial because the District Court gave the jury an erroneous instruction; and as to Issue 4, that the defendant is entitled to a new trial based on improper closing arguments by the plaintiff's attorney.

As to Issue 1, which I think is clearly the deciding issue in this matter, the fact that the eight-year-old plaintiff came out of an alley on his bicycle, not under control, and swung into a lane of traffic where the defendant was legally driving his automobile, absolves the defendant of liability. The defendant was in no way found to be negligent by the officers who investigated this accident. Evidence introduced by the plaintiff that the defendant had only recently received his driver's license had absolutely nothing to do with the cause of this accident.

This accident was observed by an off-duty police officer who was a passenger in a vehicle proceeding east along a street parallel to the alley and about half a block from the intersection of the alley and the street where the accident occurred. He saw the plaintiff come out of the alley, and observing that the bicycle appeared to be out of control, he concluded that an accident was

17

about to occur. Officers responding to the accident were immediately at the scene. They took statements from everyone involved and produced not one iota of evidence that shows in any way that the defendant driver was negligent.

The fact that an accident occurred does not raise an inference of negligence, nor is it evidence of failure to keep a proper lookout, if, indeed, that is what happened in this case. Wilson v. Doe (1987), 228 Mont. 42, 740 P.2d 687.

Numerous times this Court has recognized that it is not negligence to fail to anticipate that an approaching vehicle with an obligation to yield will disregard all traffic laws and common sense and dash out into the path of a driver lawfully and carefully proceeding in his proper lane of travel. This is what I believe Olson stands for. See also Yates v. Hedges (1978), 178 Mont. 488, 585 P.2d 1290, and Slagsvold v. Johnson (1975), 168 Mont. 490, 544 P.2d 442. "It is not negligence to fail to anticipate injury which can come about only as a result of the negligence of another." Green v. Hagele (1979), 182 Mont. 155, 158, 595 P.2d 1159, 1161. Here, the jury was so instructed but obviously did not follow that instruction.

As to Issue 2, my careful reading of the transcript in this case convinces me that no evidence was produced showing that an act or omission on the part of the defendant was the proximate cause of the accident or of the plaintiff's injuries. Therefore I would hold that under Olson, the District Court erred in not granting the defendant summary judgment, a directed verdict or judgment

18

notwithstanding the verdict.

With regard to the third and fourth issues, I am troubled by the District Court's reading of an improper instruction that may well have misled the jury and deprived the defendant of a fair trial, even though the instruction was withdrawn. Withdrawing the instruction at least called for a warning on the part of the District Court. I note that the error was called to the judge's attention.

It is obvious to me that the instruction was intended to allow the plaintiff to avoid the effect of his negligence per se. In addition, even though the instruction had been withdrawn, the prejudice of the original error was magnified when the plaintiff's counsel, in his closing argument, encouraged the jury to ignore the plaintiff's negligence. It is my belief that this, in itself, warranted granting a new trial.

I would reverse and remand to the District Court for a new trial.

John Conway Harrison
Justice

19

April 15, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


E. Craig Daue, Esq.
Paul C. Meismer, Esq.
GARLINGTON, LOHN, & ROBINSON
P.O. Box 7909
Missoula, MT 59807

EDWARD K. DUCKWORTH
Attorney at Law
104 Highway 93 South
Ronan, MT 59864

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy