No.   93-565

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DONALD C. WHITE
and EDITH J. WHITE,

       Plaintiffs and Appellants,

   v.

SHIRLEY S. MURDOCK, ROBERT
JOSEPH LYNDS, JANE DOE, JOHN
DOE and the STATE OF MONTANA,

       Defendants and Respondents.

APPEAL FROM:   District   Court   of   the   Twenty-first   Judicial
District, In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

       James A. Haynes, Hamilton, Montana

     For Respondents:

       Robert E. Sheridan, Garlington, Lohn & Robinson,
Missoula, Montana (Murdock)

       Shelton C. Williams, Williams & Ranney, P.C.,
Missoula, Montana (Lynds)

       Betsy Brandborg, Special Assistant Attorney General,
Helena, Montana

**FILED**

Filed:   JUN 27 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   March 4, 1994

Decided:   June 27, 1994

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Edith White was injured in an automobile accident when the vehicle in which she was riding struck a moose on the highway and rolled over. She and her husband, Donald White, brought this action in the District Court for the Twenty-first Judicial District, Ravalli County, to recover their damages. The District Court granted the summary judgment motions of defendants Robert Lynds, Shirley Murdock and the State of Montana. We affirm.

The issue is whether disputed issues of material fact preclude summary judgment.

This case arose out of two motor vehicle accidents on U.S. Highway 93 between Hamilton and Darby, Montana, at approximately 10:45 p.m. on August 21, 1991. Defendant Lynds was driving south at a speed of 50 to 55 miles per hour in a rented Winnebago motor home. It was a clear, dark night and the road was dry. Just north of Darby, at milepost 34.3, an 800- to 900-pound moose suddenly entered the highway five to eight feet in front of the motor home. The motor home struck the moose before Lynds was able to bring it to a controlled stop 300 to 600 feet further down the highway. Lynds does not remember actually seeing any oncoming vehicles at the time the motor home struck the moose, but he was certain he had his headlights dimmed in anticipation of oncoming traffic.

The accident pushed the radiator against the engine block and the motor home began to fill with steam or smoke. After Lynds checked to make sure the moose was not in the immediate vicinity of

the disabled motor home, he and his family got out. Lynds then became aware that another vehicle was possibly in trouble when he heard voices and saw headlights shining at an unnatural angle to the road.

Plaintiff Edith White was a passenger in the front seat of the second motor vehicle, a Ford Bronco driven by her niece, defendant Shirley Murdock. Murdock, her two children, her niece, and White had been visiting White's daughter. Murdock turned north onto Highway 93 from White's daughter's private driveway, which was located approximately one-tenth of a mile south from where Lynds struck the moose.

When Murdock first saw the dead or dying moose, it was lying on the road in her lane of traffic near the center line, approximately two car lengths ahead of her. She swerved to miss the moose but hit it with the tires on the driver's side of the Bronco. She lost control and the vehicle rolled. Murdock's estimated speed at the time of impact was 25 to 30 miles per hour. Neither Murdock nor White recalls seeing the Lynds vehicle before or during the accident.

Lynds, Murdock, and the State of Montana were the only remaining defendants in this action when they moved for summary judgment in the District Court. The Whites asserted that these three defendants were negligent and that their negligence was an actual and proximate cause of Edith White's injuries sustained in the accident. The defendants argued that the undisputed material

3

facts show that both accidents were unavoidable "acts of God" and that they were not liable as a matter of law.

The parties filed deposition testimony by Lynds, Murdock, Edith White, highway patrol officer Charles Gorman, and State of Montana Highway Department employees Rusty Wrigg and Darrell Daw. After reviewing the deposition testimony and the arguments and briefs of the parties, the District Court granted summary judgment in favor of defendants Lynds, Murdock, and the State. The court found that the Whites presented no evidence, other than speculative conjecture, which would raise material questions of fact as to whether Lynds or Murdock failed in their duty to act as reasonable persons under the circumstances. The court found that the Whites were not able to establish the element of proximate cause against the State. Concluding that the Whites had failed to sustain their claims of negligence against any of the defendants, the court dismissed the action with prejudice.

Do disputed issues of material fact preclude summary judgment?

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. This Court's standard of review is the same as that of the district court. Knight v. City of Missoula (1992), 252 Mont. 232, 243, 827 P.2d 1270, 1276.

A negligence action requires proof of four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4)

4

damages. If the plaintiff fails to offer proof of one of these elements, the action in negligence fails and summary judgment in favor of the defendant is proper. U.S. Fidelity and Guar. Co. v. Camp (1992), 253 Mont. 64, 68, 831 P.2d 586, 589. The causation element requires proof of both cause in fact and proximate cause. Kitchen Krafters v. Eastside Bank (1990), 242 Mont. 155, 167-68, 789 P.2d 567, 574.

The Whites maintain they have established questions of fact as to whether both Lynds and Murdock should have seen the moose before they did and as to whether Lynds failed a duty to warn Murdock of the moose in the road. They cite this Court's opinion in Dillard v. Doe (1992), 251 Mont. 379, 824 P.2d 1016, as authority that, in a summary judgment motion, the court must presume that a breach of duty occurred. That was not the holding of Dillard.

Dillard was a comparative negligence case in which the plaintiff was injured when a snowplow hit him while he was walking on a roadway. For purposes of a motion for summary judgment, the district court was asked to assume that defendant snowplow driver was negligent. Given that assumption, the court was asked to rule whether, as a matter of law, the plaintiff's negligence was greater than defendant's, thus barring recovery. The court answered "yes" and granted summary judgment for defendant. This Court reversed on that issue. Remanding, this Court stated "it remains to be seen after sufficient further development of the record, whether any

5

actual negligence on the part of the [defendant] can be shown by the [plaintiff]." Dillard, 824 P.2d at 1020.

The Whites also cite language from Payne v. Sorenson (1979), 183 Mont. 323, 326, 599 P.2d 362, 364, which was recently quoted in Okland v. Wolf (1993), 258 Mont. 35, 40-41, 850 P.2d 302, 306:

> Under Montana law, a motorist has a duty to look not only straight ahead but laterally ahead as well and to see that which is in plain sight. Furthermore, a motorist is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view.

This language only establishes a presumption of negligence where there is evidence of something "which he could see by looking" or "which was in plain view." As discussed below, no such evidence was produced in this case. Further, neither Payne nor Okland is analogous to the present case.

In Payne, the appealing plaintiff argued that the defendant was negligent as a matter of law and that the question of defendant's negligence was erroneously submitted to the jury. We rejected that argument, in the absence of evidence that all reasonable minds could agree on the issue. Payne, 599 P.2d at 364.

In Okland, the plaintiff produced evidence of defendant's negligence, including the testimony of an eyewitness off-duty police officer and expert testimony by an accident reconstructionist. Both witnesses testified that the defendant should have seen the plaintiff before the collision. Okland, 850 P.2d at 305-06.

Here, the Whites have produced no evidence whatsoever in support of their position that Lynds was negligent. Lynds was not ticketed and the investigating highway patrol officer testified that Lynds could not have avoided hitting the moose under the circumstances of this case. It was a dark night, and a dark moose suddenly came onto the road directly in front of Lynds. There was no evidence that Lynds was looking other than where he should have been or that it was possible for him to have seen the moose any sooner than he did.

As to a duty to remove the moose from the highway after he hit it, Lynds' uncontradicted testimony demonstrated that he simply did not have enough time to do anything to warn Murdock of the possibility of a moose in the road. The Bronco had already rolled by the time Lynds got his family out of the motor home. There was additional testimony that three men working together were unable to move the moose carcass, and that a truck was finally used to drag it off the road. We conclude that the District Court did not err in ruling that the Whites have failed to establish material issues of fact concerning whether Lynds breached a duty.

Next the Whites argue that the bare facts of the accident involving the Bronco supply enough evidence that Murdock failed to act as a reasonable person to defeat her motion for summary judgment. To establish material questions of fact, the party opposing summary judgment must set forth specific facts and cannot rely on speculative, fanciful, or conclusory statements. Sprunk v.

First Bank System (1992), 252 Mont. 463, 466, 830 P.2d 103, 105. The Whites presented nothing other than their conclusory statement in support of their position that Murdock should have seen the moose sooner than she did and that she did not react as a reasonable, prudent person would be expected to react. The opinions in the depositions of the investigating highway patrol officer, Murdock herself, and Edith White do not establish anything Murdock did which was inappropriate or negligent. Because the Whites have produced no evidence upon which a jury could, without relying upon speculation or conjecture, conclude that Murdock failed to act as a reasonable person, we hold that the District Court did not err in ruling that they failed to establish a material question of fact as to whether Murdock breached a duty.

Finally, the Whites contend there is a factual question as to whether the absence of moose hazard signs caused or contributed to this accident and is attributable to the State. They maintain that the "substantial factor" test of causation is appropriate in this case, rather than the "but for" test. The substantial factor test is applied only when each of several acts, alone, could have caused the damages. Kitchen Krafters, 789 P.2d at 574. Here, it cannot be said that the absence of warning signs alone could have caused Edith White's injuries. The "but for" test applies.

Additionally, no evidence was produced that there was an established or known moose crossing place at or near milepost 34.3, where these accidents occurred. State highway department employees

testified that there had been a known moose crossing several miles up the road, and that warning signs had, in the past, been posted there. However, they also testified that the signs had been repeatedly stolen and after the road was rebuilt and the slough which had formerly attracted moose to that area was drained, it was decided that the signs would not be replaced.

Even if the signs had remained posted, Lynds testified that he did not believe his increased caution as a result of reading the warnings would have enabled him to see the moose earlier than he did or to avoid hitting the moose. The signs had been posted north of where Murdock encountered the moose. Because she was traveling north, she would not have come across the signs before she encountered the moose. The Whites have not produced rebuttal evidence on these points. We hold that the District Court did not err in ruling that the Whites have failed to establish material issues of fact as to whether actions or inactions of the State of Montana proximately caused their damages.

Affirmed.

J. A. Turnage
_____
Chief Justice

9

We concur:

_____
John Conway Harrison

_____
Karla M. Gray

_____

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority has once again usurped the function of the jury to resolve the legitimate factual issues presented by the evidence in this case.

Only when there are no issues of material fact and the moving party is entitled to judgment as a matter of law is summary judgment pursuant to Rule 56(c), M.R.Civ.P., appropriate. *Reaves v. Reinhold* (1980), 189 Mont. 284, 287, 615 P.2d 896, 898.

In concluding whether there are issues of material fact, the role of the district court and this Court requires more than simply construing the testimony of the moving party in the manner most favorable to that party. All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing the summary judgment. *Reaves*, 615 P.2d at 898.

Furthermore, we have, for good reason, held that ordinarily issues of negligence are questions of fact not susceptible to summary adjudication. *Duchesneau v. Silver Bow County* (1971), 158 Mont. 369, 377, 492 P.2d 926, 931. This case is a classic example of why issues of negligence are not normally susceptible to summary judgment.

Before discussing the facts, and inferences from those facts which give rise to issues of fact, it is necessary to discuss the rules of law which pertain to the defendants' conduct.

Both defendants, Shirley Murdock and Robert Lynds, are excused from their collision with a 600 to 900 pound moose based on the

11

majority's acceptance of their disclaimer that they did not observe it until it was too late to avoid it. However, their protest is of little assistance to them under Montana law. As noted by the majority, we held in *Payne v. Sorenson* (1979), 183 Mont. 323, 326, 599 P.2d 362, 364, that:

> Under Montana law, a motorist has a duty to look not only straight ahead but laterally as well and to see that which is in plain sight. Furthermore, a motorist is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view.

Montana's laws pertaining to motor vehicle equipment require that any vehicle being operated on Montana's highways between sunset and sunrise must be equipped with headlamps which on high beam are capable of illuminating objects at a distance of 350 feet, and on low beam are capable of illuminating objects at a distance of 100 feet. Section 61-9-220, MCA. Unless approaching or following another vehicle, use of the higher beam is required. Section 61-9-221(2), MCA.

In other words, it makes no difference that defendant Murdock claims not to have seen a 600 to 900 pound moose lying in the middle of the highway until she was two car lengths away, and it makes no difference that defendant Lynds failed to see the same moose until it was located in his lane of travel at a distance of 5 to 8 feet away. Both parties are presumed to have seen that which could have been seen had they been reasonably diligent and, if their vehicles were equipped as required by law with the proper headlamps which were being used as required by law, they should

12

have seen the object with which they collided in this case at a distance of at least 350 feet away.

Lynds testified that he was operating a recreational vehicle at a speed of 50 to 55 m.p.h. and proceeding in a southerly direction on Highway 93 just north of Darby. It was dark out, but there was little traffic and the road was straight and dry. He testified that he did not have his headlamps on high beam, but was not following another vehicle and does not recall that any vehicle was approaching him.

Contrary to the representation in the majority opinion, he did not testify that the moose with which he collided entered the highway 5 to 8 feet in front of him. He testified that when he first observed the moose it was already in his lane of travel and 5 to 8 feet away.

He acknowledged that from the high seating position in the RV that he was driving he had a good field of vision. Yet, in spite of that field of vision and the 350 feet at which his headlamps should have illuminated the roadway and the adjoining areas, he had no idea where the moose came from until it was 5 to 8 feet in front of him. In fact, he never did apply his brakes.

Only one of two situations could have occurred prior to Lynds' collision with the moose. Either the moose was in his lane of travel all along and he should have been aware of its presence at a distance of 350 feet away and been able to make some effort to avoid it, or it approached the highway from an area he was obligated to observe but which he evidently did not observe. In

either event, he failed to comply with his obligation under Montana law, as set forth in our *Payne* decision, to observe the roadway ahead of him and see that which was in plain view.

Furthermore, when Lynds stopped his vehicle 300 to 600 feet ahead of where his collision occurred, he had an obligation to do what he could to warn approaching motorists of the hazard he had created. He states in his testimony that he did so by activating the flashing warning signals on his vehicle. However, Murdock, who struck the same moose shortly after Lynds' collision, stated that even though the motor home was parked on the highway prior to her collision, she did not see it because there were no flashing lights. She testified that if she had seen flashing lights she would have slowed her vehicle.

For similar reasons, there were issues of fact regarding Murdock's negligence. She testified that as she left the home where she and Edith White had been visiting, she doesn't recall whether her headlights were on high or low beam, but acknowledged that she saw no oncoming traffic, and therefore, there was no reason not to have them on high beam.

From the time she turned onto the highway until she collided with the moose, she had not accelerated to more than 25 or 30 miles an hour. When she first saw the moose, it was straddling the center lane of the highway and blocking about half of her lane of travel. However, she testified that she did not see the moose until she was nearly two car lengths away. The highway was newly paved and had wide shoulders and there was ample room for her to

14

avoid the moose. However, she swerved too late to completely avoid it, and as a result, rolled her vehicle. Obviously, the moose did not jump out in front of her, it was lying prone on the highway. Had her headlights been on high beam, she should have been able to see it for a distance of 350 feet. However, even on low beam, had she been keeping the lookout required by law, she should have seen it a distance of 100 feet away, not two car lengths, or approximately 20 feet away, as she testified.

This testimony raises several issues of fact that should have been decided by a jury. (1) Were Lynds or Murdock keeping a proper lookout as required by law? (2) Had they been keeping a proper lookout, at what point should they have observed the hazard ahead of them on the roadway? (3) Finally, when Lynds and Murdock did observe a hazard ahead of them on the roadway, did they act reasonably or negligently in response to that hazard?

The majority opinion never reaches these issues because it turns the rules of summary judgment upside down. It takes the testimony of the parties moving for summary judgment and construes it in the manner most favorable to them. The majority also completely ignores all necessary inferences from the testimony given by defendants. The majority simply disposes of these issues by concluding that under *Payne* there is only a presumption of negligence when the object struck is in plain view, and that there is no evidence that the moose was in plain view in this case. That conclusion defies logic. If both defendants' headlights were operating as required by law, and if the moose was located where

they first described it, why wasn't it in plain view earlier than when they first observed it? It is simply impossible that it was not.

The majority inappropriately refers to the fact that defendants were not ticketed. However, that observation is neither correct nor relevant. Lynds was ticketed because three passengers in his RV did not have seatbelts on. Perhaps that explains his reluctance to apply his brakes before colliding with the moose. However, whether he was or was not ticketed for any violation is irrelevant to whether or not he was negligent.

The majority also relies on the highway patrol officer's testimony that Lynds could not have avoided hitting the moose under the circumstances of this case. However, that testimony was incompetent for the purposes for which it was offered or accepted by the majority. The patrolman was not at the scene of the accident and did not observe its manner of occurrence. He did not know where the moose came from before appearing in Lynds' lane of travel and acknowledged that depending on its route to where it was struck, Lynds might have been able to observe the animal substantially in advance of his collision with it.

I also dissent from the majority's conclusion that the District Court correctly dismissed Donald and Edith White's claim against the State of Montana by summary judgment. This part of the majority opinion is incorrect for two reasons.

First, the majority discusses whether the State breached a duty of due care by its failure to erect a warning sign in advance

of the area where this accident occurred. Contrary to the representations of the majority opinion, there was ample evidence that the State had such a duty. Based on prior vehicle collisions with moose in this area, the Highway Department had determined that a hazard existed as early as 1987, and had first erected warning signs at that time. Even though a slough which was one of the attractions for moose in the area had been eliminated by road reconstruction in 1991, the Highway Department contract for that construction required that the contractor re-erect the signs as part of the highway project. The fact that the signs were stolen did not relieve the Highway Department of the duty to maintain its highway by putting them back up again. Section 61-8-203, MCA, requires that the State warn motorists of known hazards. Darrell Daw, the Field Maintenance Supervisor for the Highway Department in the area where the accident occurred, testified that frequent moose crossings were a known hazard, even after reconstruction of this stretch of highway.

Most importantly, however, the District Court did not decide, and the State on appeal does not argue, that it had no duty to erect warning signs. The District Court concluded, based simply upon Lynds' and Murdock's testimony that they would not have slowed down because of warning signs, that there was no causal relationship between the State's failure to erect the signs and the collisions which resulted in Edith White's injuries. However, the opinions of the District Court and the majority of this Court ignore significant other testimony given by both defendants. For

17

example, Lynds testified that when he sees deer crossing signs it makes him more alert and he is more inclined to watch what is happening on the road ahead of him. When asked if he would have driven any differently had he seen signs warning him that moose crossed the highway in the area where this collision occurred, he testified: "I probably would have driven a little bit more defensively, yes, but it wasn't there." He also testified that if he had known there was a possibility of moose crossing in the area, and if there had not been a car coming toward him, his headlights would have been on high beam at the time of the accident, rather than low beam.

This testimony, when considered in combination with the legal requirements for headlamps on vehicles, the broad range of vision available in the recreational vehicle, and the broad range of illumination that would have occurred from high beam, are direct evidence that the collision which led directly to Edith White's injuries could have been avoided had an appropriate warning been given to Lynds.

Likewise, Murdock testified that if she had seen moose warning signs that evening they would definitely have made an impression on her and she would have been more alert for the hazards that moose present. Perhaps in her case, because of the low speed at which she was already traveling, she would not have been going any slower because of warning signs. However, had Lynds been adequately warned there would not, in all likelihood, have been a dead moose on the highway for Murdock to collide with.

None of these facts are referred to in the District Court opinion or the majority's opinion. Considering these facts it is impossible to conclude that there are not at least inferences from the testimony which create factual issues regarding the subject of causation.

Under our laws pertaining to the respective responsibilities of courts and juries, the majority has no business substituting its judgment regarding the merits of plaintiffs' claim for that of the jury. However, that is what they have done in this case. For these reasons, I dissent from the majority opinion.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice