No. 96-595

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


BERTRAM JAMES WISE,

Plaintiff and Appellant

v.

FORD MOTOR COMPANY,
a Delaware Corporation,


Defendant and Respondent.


APPEAL FROM:   District Court of the Fourth  Judicial District,
In and for the County of Missoula,
the Honorable Douglas G. Harkin, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Bernard J. "Ben" Everett; Knight, Dahood, McLean & Everett,
Anaconda, Montana

For Respondent:

John D. Stephenson; Jardine, Stephenson, Blewett & Weaver,
Great Falls, Montana



Submitted on Briefs: May 29, 1997

Decided: August 28, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Bertram James Wise (Wise) appeals from the judgment and jury verdict of the Fourth Judicial District Court, Missoula County, dismissing his complaint for damages against Ford Motor Company (Ford). We affirm.

We address the following issues on appeal:

1. Was there substantial evidence to support the jury's verdict that the Wise Ford Escort was not defective?

2. Did the District Court err in failing to grant Wise's motion for directed verdict on the issue of Ford's failure to warn Wise that Ford Escort windows could break in a car wash?

3. Did the District Court err in failing to grant Wise's motion for a new trial based upon insufficiency of the evidence?

Factual and Procedural Background

In 1992 Wise drove his daughter's 1987 Ford Escort automobile through a mechanical car wash. As one of the pressurized water jets was spraying water at the driver's side window, the window suddenly exploded into the car. Wise suffered injuries as a result of this incident.

Wise filed suit against Ford to recover damages and a jury trial was subsequently held. At the close of the evidence Wise moved the court for a directed verdict on the basis that the "uncontradicted evidence" established that Ford had actual notice that Ford Escort driver's door windows could explode when exposed to the temperature and pressure changes of a car wash and that, despite this actual notice, Ford did not warn Wise of the vehicle's inherent danger. The court denied the motion. The jury returned a verdict for Ford specifically finding that Wise's door window was not defective either in its design or by reason of Ford's failure to warn of the inherent danger. Wise filed post-trial motions for a judgment notwithstanding the verdict or in the alternative for a new trial. The District Court denied Wise's motions. Wise appeals the judgment and the denial of his post-trial motions.

Discussion

1. Was there substantial evidence to support the jury's verdict that the Wise Ford Escort was not defective?

This Court's standard of review of a jury's verdict is to determine whether substantial evidence existed to support the verdict. Okland v. Wolf (1993), 258 Mont. 35, 39, 850 P.2d 302, 305. In our examination, we review the facts in the light most favorable to the prevailing party. If conflicting evidence exists, the credibility and weight given to the evidence is in the jury's province and we will not disturb the jury's

findings
unless they are inherently impossible to believe.  Okland, 850 P.2d at 305 (citing Silvis
v. Hobbs (1992), 251 Mont. 407, 411, 824 P.2d 1013, 1015-16).

Wise contends that all of the substantial credible evidence presented establishes that
Ford Escorts were defectively designed and unreasonably dangerous.  He points to evidence which established numerous instances in which side windows of the Escort series model years 1981 through 1990 broke in car washes; that the cause of the Escort exploding window problem was a misaligned window frame in conjunction with the sudden temperature or pressure change produced by a car wash; that persons were injured by the exploding windows; and that Ford had ample notice of the dangerous condition.

Wise's complaint is based on a products liability theory.  A person who sells a product in a defective condition unreasonably dangerous to a user or consumer is liable for the physical harm caused by the defective product. Restatement (Second) of Torts  402A (1965) and  27-1-719, MCA.  This Court adopted  402A in the case of Brandenburger v. Toyota Motor Sales (1973), 162 Mont. 506, 512-15, 513 P.2d 268, 272-74.  A product is in a defective condition when it is capable of causing injury to the user beyond that which would be expected by the ordinary user.  Streich v. Hilton-Davis (1984), 214 Mont. 44, 57, 692 P.2d 440, 447.  In McJunkin v. Kaufman & Broad Home Systems (1987), 229 Mont. 432, 445, 748 P.2d 910, 918, this Court set out the rule that "[t]he proper test of a defective product is whether the product was unreasonably unsuitable for its intended or foreseeable purpose.  If a product fails this test, it will be deemed defective."

Ford's expert testified at trial to the following facts regarding the manufacture and characteristics of the driver's side windows in Ford Escorts.  The side windows in the Wise vehicle were made of tempered glass.  Tempered glass, often described as "tempered safety glass," is used by Ford for side windows on all of its car lines and is used worldwide by virtually all manufacturers of motor vehicles for side window applications.  When tempered safety glass fractures it disintegrates into hundreds of small granular fragments which have rounded or blunt edges.  Such small bluntly-edged pieces generally cause less injury than regular glass fragments.  The tempering process creates a tough "skin" on the surface of the glass which is referred to as the "compressive surface."  If the compressive surface of the glass is penetrated for any reason the window will spontaneously fracture and disintegrate into hundreds of small pieces.  All failures of tempered safety glass originate from penetration of one of the compressive surfaces

on the glass.  Ford has received reports of spontaneous breakage of side windows of vehicles parked in driveways, vehicles traveling on the road, vehicles passing each other, vehicles hitting potholes, vehicle doors slamming, vehicle windows breaking in car washes, and other situations.

Ford's expert testified that the typical scenario for such spontaneous glass breakages is that a small scratch or chip is inflicted on one of the window surfaces from rock chips on the road, grit or sand lodged between the window and window seal, or sharp objects coming in contact with the glass surface.  Typically such scratches or chips are not visible to the naked eye and, over time, the scratch or chip enlarges to the point that it penetrates the compressive surface, although it is still too small to be noticeable.

Spontaneous glass breakage of tempered glass occurs on all models of vehicles regardless of manufacture and vehicle line.  Ford's expert testified that even today there is no technology available to avoid occasional breakages of this type.

Both Ford's expert and Wise's expert testified that Ford experienced higher than expected breakages of side windows on Ford Escorts produced between 1981 and 1987.  In mid-1985, Ford engineers investigated the problem and concluded that on some Ford Escorts, the glass surface of the window could come into contact with the edge of a metal bracket in the door frame when the window was rolled up tightly (highly torqued) creating a scratch on the compressive surface of the window.  Ford redesigned the window so that the glass would no longer contact the metal edge of the bracket in the door frame.  The first shipments of the newly designed glass for use in drivers' side windows to the assembly plants commenced the week of March 3, 1986 as evidenced by a Glass Division Engineering Change Bulletin.  Based on this document and other evidence indicating that assembly plants were using the new style windows, Ford's expert testified that the Wise vehicle, which was assembled on March 12, 1987, more than one year after the new type windows were shipped to the assembly plants, contained the new style window.  After Wise filed suit, Ford's expert examined the Wise vehicle in Missoula and again in Michigan where he conducted an examination in which he installed an "old style" window in the Wise door and cranked the window up and down.  He confirmed his observations in Missoula that there was no binding condition causing metal-to-glass contact when the window was tightly torqued.  The expert concluded that the Wise vehicle was not subject to the binding condition which was causing higher than normal breakage rates on older model Escorts equipped with the old style windows.  Based on this conclusion, Ford's expert gave his opinion that the most likely cause of the window breakage in the Wise Escort was a scratch or chip inflicted by road gravel or grit which augmented over time to the point that when the window was subjected to the pressure and temperature changes in the car wash the compressive surface of the window failed and the window disintegrated.  Wise's expert agreed that tempered glass always

fails from a surface defect and that such a defect could be so small as to be unobservable.

Wise argues that because Ford disposed of the door to the Wise vehicle after performing tests on it, the door was not available to the parties at trial and thus Wise could satisfy his burden of proof that the door window was defective by circumstantial evidence. Brown v. North Am. Mfg. Co. (1978), 176 Mont. 98, 576 P.2d 711 and Brothers v. General Motors Corp. (1983), 202 Mont. 477, 658 P.2d 1108. Relying on Brown and Brothers, Wise argues that the "flexible" standard of circumstantial evidence can be met by proof of the circumstances of the accident, similar occurrences under similar circumstances and elimination of alternative causes. We agree. Wise contends that he met this burden through evidence of similar reported incidents and through Wise's and Wise's daughter's testimony that there were no scratches or chips on the window when it was taken through the car wash. However, Ford's expert testified that a small scratch or chip, invisible to the naked eye, could cause the spontaneous breakage. Alternative causes were therefore not necessarily eliminated and the jury could have found that Wise did not meet his burden of proof by way of circumstantial evidence.

Furthermore, the jury was presented with evidence suggesting that tempered glass was used by all car manufacturers and that all cars had problems with spontaneous breakage and that there was no better technology available to reduce the risk. Therefore, the jury had substantial evidence that the window glass was not "unreasonably" dangerous.

In sum, although Wise claims that Ford was aware that its Escorts manufactured between 1981 and 1987 had an especially high incidence of spontaneous breakage, the jury also heard evidence that Ford remedied the problem in its Escorts manufactured after 1986, which would include the Wise's 1987 Escort. In other words, the jury had substantial evidence upon which to base its decision that the Wise Escort did not have an "unreasonably dangerous defective condition." Wise's contrary evidence that his daughter's Escort may have been manufactured with the old style window was only one piece of the evidence considered by the jury. In reviewing a jury verdict, we do not decide whether a jury verdict was correct or whether a jury made the right decision. We only review whether substantial evidence supports the jury's verdict and we determine that, in the instant case, it does. Therefore, viewing the evidence in a light most favorable to Ford, substantial evidence existed to support the jury verdict in favor of Ford.

2. Did the District Court err in failing to grant Wise's motion for directed verdict on the issue of Ford's failure to warn Wise that Ford Escort windows could break in a car wash?

Our standard of review of an order denying a motion for a directed verdict is the same as from denial of a motion for judgment notwithstanding the verdict. This Court

reviews an order denying a motion for judgment notwithstanding the verdict in a light most favorable to the non-moving party. Okland, 850 P.2d at 304. The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision. Unless there is a complete absence of any credible evidence in support of the verdict, a motion for judgment notwithstanding the verdict is not properly granted. Barmeyer v. Montana Power Co. (1983), 202 Mont. 185, 191, 657 P.2d 594, 597 (overruled on other grounds).

Wise contends that because Ford admittedly had knowledge that windows in the 1981-1990 model Escort series could explode when exposed to sudden temperature or pressure changes specifically in car washes, and deliberately decided not to warn consumers of this danger, that Ford should be found liable under a duty to warn theory.

Montana law recognizes a manufacturer's liability for its failure to warn of a danger in its product as a separate and distinct theory of products liability. Brown, 576 P.2d at 718. Although a product may be technically sound, if a manufacturer fails to warn of an injury causing risk associated with the use of the product, the product is thereby rendered unreasonably dangerous. Brown, 576 P.2d at 718-19; Kruegar v. General Motors (1989), 240 Mont. 266, 278, 783 P.2d 1340, 1348.

Wise contends that the existence of a Ford "inter-office memorandum" dated October 21, 1991, recognizing the occurrence of window breakages in the 1981-1990 model Escort series, and indicating Ford's decision not to warn consumers of the problem, proves Ford knew of the dangerous condition and, despite this knowledge, failed to properly warn consumers. The memorandum provided, in relevant part, the following:

The Escort window concern has existed on the 1981 Escort forward, with each model year up to 1991, the rate of incidents has lessened. No TSB article was published because of the sensitivity of the issue. Repair instructions were conveyed to the Districts by word-of-mouth. . . .

. . . .

The most likely cause is the window frame being misaligned causing a stress on the door glass. A sudden temperature or pressure change (e.g. from a car wash) could cause the glass to shatter. Our experience to date indicates that once a new door glass is installed the concern does not reoccur.

. . . .

Import Service Engineering has no reports for this concern on the new style Escort. No TSB action is planned on the old style Escort due to the sensitivity of the concern.

In addition to recognition of the binding condition in the older style windows, Ford had found that Escorts containing the new style window did not experience the breakage problem. Given that the jury was presented with substantial evidence that the Wise

Escort was manufactured with the new style window, and that the binding condition did not occur when Ford's expert installed an older style window in the Wise Escort, the jury had substantial evidence upon which to base its verdict that the Wise vehicle was not in a defective condition unreasonably dangerous despite the existence of the Ford memorandum.   Although Wise presented evidence that Ford knew that its Escort windows occasionally broke in car washes, both experts testified that a warning was inappropriate for this type of risk.  The tempered glass which was used in Ford Escort windows was the same type glass used in most vehicles and was subject only to the incidence of breakage inherent in tempered glass.  Ford's expert testified that he could not think of any appropriate warning  to caution drivers that the side windows occasionally break from a variety of reasons.  Wise's expert testified that he did not think a warning "would have done an awful lot of good."    Viewing the evidence in a light most favorable to Ford, we hold that there was credible evidence to support the jury's verdict.  Accordingly, the District Court's denial of Wise's motion for a directed verdict on the failure to warn issue was proper.

3.    Did the District Court err in failing to grant Wise's motion for a new trial based upon insufficiency of the evidence?

Our review of a district court's denial of a motion for new trial is whether the court abused its discretion.  Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 149, 900 P.2d 281, 282.  Our review of an appeal based upon insufficiency of the evidence to support the jury's verdict is whether there is substantial evidence in the record to support the verdict.  Cartwright v. Equitable Life Assur. (1996), 276 Mont. 1, 23, 914 P.2d 976, 990.

Wise contends that the jury's factual determination that the Wise Escort was neither defective in design nor defective because it lacked a warning of the inherent danger that Ford Escort side windows break in car washes is without any support in the evidence let alone substantial evidence.

Consistent with our holding in Issue 1, we hold that substantial evidence existed for the jury to find that the Wise Ford Escort window was not defective.  Therefore, the District Court did not abuse its discretion in denying Wise's motion for new trial based upon insufficiency of the evidence to support the verdict that the Wise Escort was not defective by design.

Likewise, consistent with our holding in Issue 2, we hold that credible evidence existed for the jury to find for Ford on the issue of its failure to warn Wise in regard to

the spontaneous breakage of the Escort window. Therefore, the District Court did not abuse its discretion in denying Wise's motion for a new trial based upon insufficiency of the evidence to support the verdict that the Wise Escort was unreasonably dangerous due to Ford's failure to warn.

In summary, we hold that substantial evidence existed to support the jury's verdict that the Wise Ford Escort was not defectively designed, nor defective for Ford's failure to warn Wise that the side windows could break in car washes. Because substantial evidence supports the jury's verdict, the District Court did not err in denying Wise's motion for directed verdict, or his post-trial motions. Affirmed.

/S/   W. WILLIAM LEAPHART

We concur:

/S/   J. A.   TURNAGE
/S/   JAMES C. NELSON
/S/   KARLA M. GRAY

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

In Montana, manufacturers are strictly liable for defective products which are unreasonably dangerous to the user when the product causes damage or injury to the user.

Section 21-1-719, MCA (1987). We have previously held that a product is in a defective condition and is unreasonably dangerous to the user when it has a propensity for causing damage to the user or his property beyond that which would be contemplated by the ordinary user or consumer who purchases the product. Streich v. Hilton-Davis Div. of Sterling Drug, Inc. (1984), 214 Mont. 44, 57, 692 P.2d 440, 447. We have also held that a product is defective if, when used in a manner reasonably foreseeable by the manufacturer, an unreasonable danger is presented which would not be recognized by the ordinary user without a warning. Streich, 214 Mont. at 57, 692 P.2d at 447.

Based on the undisputed facts in this case, the Escort being operated by Bertram James Wise presented a hazard beyond what would be contemplated by the ordinary consumer and the hazard presented an unreasonable danger which could only be eliminated by an adequate warning. No one that I know believes that when they drive their car into a car wash there is a significant possibility that the driver's side window could shatter and seriously injure them. If Ford knew that its vehicle created a significant risk of that type, it had a duty to warn its customers of that fact.

The majority concludes that the following testimony from Ford's factory representative created issues of fact which were properly resolved by the jury:

1.   The same type of glass used in this vehicle was used by all manufacturers;

2.  All manufacturers of motor vehicles have similar problems with shattered glass;

3.  The design feature which led to a high incidence of shattered glass in Ford Escorts was not present in 1987 models; and

4.  It was the opinion of Ford's expert/representative that the window in the Wise vehicle shattered because of a preexisting scratch or chip.

The problem with the evidence relied on by the majority is that it was either disproved by documents found in Ford's possession, or was opinion evidence given without factual foundation.  Furthermore, the plaintiff was denied the opportunity to refute the unfounded opinion evidence by Ford's loss of the vehicle part in question.  The following documents were discovered from the defendant during the course of this litigation:

1.  A bulletin from the International Car Wash Association to car wash operators dated July 1991 which stated the following:

SPECIAL ALERT TO CAR WASH OPERATORS

RE: FORD MOTOR COMPANY LYNX AND ESCORT MODELS

Car wash operators from the across the nation are reporting problems with Ford Motor Company's Lynx and Escort model cars of various years' vintage with the side windows virtually exploding in the car wash or after the customer leaves the car wash.

For no specific action or reason, car wash operators are reporting that side front windows on these automobiles are virtually exploding either in the car wash itself, the finishing area of the car wash, or while customers are driving on the streets.  In most cases, the window pops and completely disintegrates for no apparent reason.

Early investigation shows no apparent reason for these mishaps and they are being observed under a variety of different circumstances.  The Ford Motor Company has been contacted on this problem, and at the present has no answers for the occurrences.  ICA therefore advises car wash operators to in turn advise their customers that if they have this problem to return the car to their Ford Motor Company dealer for appropriate action.

2.  A proposed letter from Bill Dana, President, Mike's Carwashes, Inc. (presumably to other car wash operators):

THE MYSTERIOUS POPPING WINDOW

Dear Ford Escort and Mercury Lynx Owners,

In the past few years, we have had several instances of Escort and Lynx cars in which the side windows have disintegrated either in the car wash or even after leaving.

This is NOT a problem unique to Mike's Carwashes.  Please see the Special Bulletin from the International Carwash Association posted on this bulletin board.

At Mike's we wash over a million cars a year and in 1990 we had 12 such incidents; so far in 1991 we have had 6.  Also, we have not

experienced "popping windows" on any other make or model of car in our 43 year history.

However, because of increased insurance claims on these vehicles, which in turn can increase prices for all Mike's car wash customers, we feel it only fair to institute the following policy:

As of July 1, 1991, we can no longer be responsible for breakage of side windows on Ford Escort and Mercury Lynx automobiles.  You will be using our car wash at your own risk.

We apologize for any inconvenience this may cause you.

Sincerely,
(signature) Bill Dana, President,
Mike's Carwashes, Inc.

(Underlining added.)
3.   On October 21, 1991, Ford Motor Company generated the following interoffice memorandum in response to the previous two documents:

BACKGROUND

. . . .

The Escort window concern has existed on the 1981 Escort forward with each model year up to 1991; the rate of incidence has lessened.  No TSB article was published because of the sensitivity of the issue.  Repair instructions were conveyed to the districts by word-of-mouth . . . .

. . . .

POSSIBLE CAUSE ESCORT WINDOW

The most likely cause is the window frame being misaligned, causing a stress on the door glass.  A sudden temperature or pressure change (e.g. from a car wash) could cause the glass to shatter.  Our experience to date indicates that once a new door glass is installed, the concern does not reoccur.

CONCLUSION

. . . .

Import service engineering has no reports for this concern on the new style Escort.  No TSB action is planned on the old style Escort due to the sensitivity of the concern.

(Underlining added.)
4.   Ford interoffice memorandum dated April 6, 1992:
Subject:  Escort "Popping" Window

. . . .

Current Status:

Door glass breakage at car washes was a major problem on the 1985«/86 MY Escort/Lynx due to the over-torquing of the window mechanism. The letter from the International Car Wash Association dated 1991 refers to problems on the Escort and Lynx. Although no model year is mentioned, the Lynx was last produced for the 1987 MY. Due to the "non-emergency" designation by body and direction to use the old parts, the model years containing old design parts are 1985«, 1986, and much of 1987.

Due to the sensitive nature of the problem and the visibility in the press, it is not recommended to contact either the International Car Wash Association or Mike's Carwashes.

(Underlining added.)

In other words, we know from documents in Ford's possession that whether or not other manufacturers used the same type of glass, car washes were not experiencing the same type of problems from cars other than the Ford Escort and Mercury Lynx. We also know that even though the window assembly had been redesigned prior to 1987, the change was treated on a "non-emergency" basis so that most of the cars manufactured in 1987 still had old design parts, and Wise's vehicle was manufactured in the early part of 1987. We also know from Ford's interoffice memorandum that the problem of popping windows started with the 1981 Escort and was present on models manufactured up to 1991. Furthermore, although Ford's expert/representative testified that in his opinion the shattered glass in Wise's vehicle was most likely the result of a scratch or chip, he admitted that he had never inspected the window and therefore had no basis for that opinion, and the door of the vehicle which was purchased by Ford specifically for testing was lost so that no one other than Ford could test it. Finally, the owner's uncontradicted testimony was that no scratch or chip was present prior to the time the window shattered.

We have stated the test for a directed verdict as follows:

The test commonly employed to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable men could draw different conclusions from the evidence. If only one conclusion is reasonably proper, then the directed verdict is proper.

Semensa v. Leitzke (1988), 232 Mont. 15, 18, 754 P.2d 509, 511 (citation omitted). In this case, based on Ford's own documents, reasonable persons could not disagree that Ford Escorts manufactured from 1981 through the 1990 model year had a propensity for causing damage to the user beyond that which would be contemplated by the ordinary motor vehicle operator, and that Ford, because of the issue's "sensitivity," failed to warn users of the potential danger or even respond when car wash operators asked for guidance because of the frequency with which the windows were shattering. For these reasons, the vehicle in which Bertram James Wise was injured, was, by

our prior definitions, a defective product which caused his injury.  The issues were simple factually and legally.  Car windows are not designed to shatter from the pressure of a car wash.  If they are, they are dangerous and the owners of the vehicle should be warned.  This window did shatter.  The owner was not forewarned, even though Ford knew of the risk.  No warning was given because of the Company's determination that it would not be in the Company's best interest to do so.  Ford's discredited testimony notwithstanding, Wise was entitled to a directed verdict.

For these reasons, I dissent from the majority opinion.

/S/   TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

/S/   WILLIAM E. HUNT, SR.