DA 12-0207

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 78

MATT STUBBLEFIELD, JOHN KNAPP,
and NEIL COURTIS,

Plaintiffs and Appellants,

v.

TOWN OF WEST YELLOWSTONE,

Defendant and Appellee.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. 08-807AX
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Stephen C. Pohl, Paul Grigsby, Attorneys at Law, Bozeman, Montana

For Appellee:

James D. McKenna, Michael Q. Davis, Jr., McKenna Law, P.C., Bozeman,
Montana

Submitted on Briefs:  November 21, 2012

Decided:   March 26, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Plaintiffs Matt Stubblefield, John Knapp, and Neil Courtis (plaintiffs), police officers in West Yellowstone, Montana, appeal the District Court's denial of their combined motions to amend the judgment and for a new trial.  We affirm.

¶2      We restate the issue on appeal as follows:

¶3      *1. Did the District Court err by denying the plaintiffs' combined M. R. Civ. P. 59 motions for a new trial and to amend the judgment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      Plaintiffs are employed as police officers by the defendant Town of West Yellowstone, Montana (the Town).  West Yellowstone is a small community in Gallatin County and serves as the western entrance to Yellowstone National Park.  West Yellowstone receives thousands, if not millions, of visitors during the summer months due to its proximity to Yellowstone.  During the off-season, however, services and amenities are limited, expensive, or altogether unavailable.  Despite its relative remoteness, the town is attractive for its proximity to a variety of outdoor activities.

¶5      Officer Stubblefield has been employed as police officer in West Yellowstone since 2004, while Officers Knapp and Courtis have been employed by the Town since 2007.  The plaintiffs largely relocated to West Yellowstone to partake in its recreational opportunities.  However, the plaintiffs contend that the Town's on-call policy for police officers prior to 2009 was so restrictive that they could not engage in personal activities between shifts.  They

thus claim that they should have been compensated for their time spent on call under the Fair Labor Standards Act, § 29 U.S.C. 201, *et seq.* (2011) (FLSA).

¶6     The following facts concerning the on-call policy are undisputed. During the relevant time frame, the Town generally employed four police officers. One police officer was on duty at all times, with one officer working the day shift (6 a.m. to 6 p.m.) and another working the night shift (6 p.m. to 6 a.m.). Work periods lasted for two weeks, and officers worked three 12-hour shifts one week and four 12-hour shifts the next, totaling 84 hours of work per 14-day period.[1] From the beginning of their employment until a change in the collective bargaining agreement in March 2009, each officer was also required to be on-call for the 12 hours immediately preceding their shift. Thus, if an officer worked the Monday, Tuesday, and Wednesday day shifts, he would be on call Sunday, Monday, and Tuesday nights from 6 p.m. until the start of his shift at 6 a.m. the next morning.

¶7     This on-call requirement stemmed from the Town's policies requiring an additional police officer to provide backup for certain more-dangerous situations like crimes in progress, most disorderly conduct calls, and partner or family member assault. Other requests for backup were made according to the responding officer's discretion. Because the on-call requirement was intended to provide backup for potentially dangerous situations, the on-call officer was provided a cell phone and expected to be reachable at all times. This responsiveness required the plaintiffs to stay within cell service areas and keep their phone ringers loud enough to wake them if a call came while they were sleeping. The officers were

3

also apparently expected to respond immediately, be in some sort of clothing that identified them as police officers, to have their police gear, and to respond in a patrol car. If an officer was actually called out while on call, they would receive a minimum of 2.5 hours of overtime pay. The officers were not otherwise compensated for their on-call time.

¶8 The parties did dispute the nature and length of the response-time requirement. The plaintiffs claimed that unwritten policies required a five to ten minute response. Witnesses for the Town, including the Chief of Police, claimed the response time requirement was flexible, informal, and often longer. However, all parties agreed that the small size of West Yellowstone allowed for generally quick response times.

¶9 The plaintiffs brought a complaint against the Town under the FLSA on October 6, 2008 alleging that they should be compensated for *all* their time spent on call, and not just for call outs. Plaintiffs specifically alleged that the on-call rules were so restrictive that the on-call time was spent predominantly for the Town's benefit and, thus, they should have been compensated. Plaintiffs claimed they were owed compensation in the form of overtime pay for their on-call hours. Plaintiffs also claimed liquidated damages pursuant to 29 U.S.C. § 216, interest, costs, and attorney fees.

¶10 A jury trial was conducted during the week of November 14-17, 2011. Both sides presented documentary and testimonial evidence concerning the details of the Town's on-call policy and the plaintiffs' activities during their on-call shifts. The plaintiffs generally

---

[1] Under exception 7(k) to the Fair Labor Standards Act, § 29 U.S.C. 207(k), police officers may work more than 40 hours per week without incurring overtime.

claimed that the on-call requirements hindered their sleep, prevented them from running errands or doing certain chores around the house, interfered with their relationships, denied them the opportunity to hold second jobs, and prevented them from recreating outside West Yellowstone between shifts. As the Town no longer requires police officers to be on-call between shifts, the plaintiffs claimed that they can now engage in personal and family activities that would have formerly been reserved for their off-duty days. The plaintiffs repeatedly highlighted the isolated nature of West Yellowstone and the immediate response requirement for the on-call officer, claiming that these factors restricted their ability to engage in personal activities and rendered their on-call time primarily for the Town's benefit.

¶11 The plaintiffs also argued that their on-call hours were spent primarily for the benefit of the town by contending that their availability for backup furthered important public safety interests. The plaintiffs claimed that the elimination of the mandatory on-call requirement in March of 2009 left the Town, public, and on-duty officers less safe. The testimony of several of the dispatchers in West Yellowstone similarly indicated that the elimination of the on-call requirement made their jobs more stressful and potentially rendered the town less safe.

¶12 The Town's evidence largely questioned the plaintiffs' claimed inability to engage in personal activities or sleep. The Town sought to refute the allegedly burdensome response requirements by eliciting testimony that officers had previously either failed to show up for a call or had shown up late without any consequences. The Town also developed testimony that the plaintiffs received seven days off out of every 14 day work period, that other

agencies could potentially provide backup if the on-call officer didn't respond, and that a plaintiff believed the compensation rate for call outs was fair. The Town further claimed that the infrequent nature of calls lessened the burden of on-call shifts. A summary of the plaintiffs' timesheets proffered by the Town showed that Sergeant Stubblefield was called out 18 times in 609 on-call shifts, that Officer Knapp was called out three times in 234 on-call shifts, and that Officer Courtis was called out six times in 186 on-call shifts. Each of the plaintiffs disputed these calculations, but they did not offer any evidence supporting their belief that call outs were more frequent.

¶13 After reviewing the evidence and testimony, the jury rendered a verdict in favor of the Town on November 17, 2011. The court entered judgment on December 7, 2011. The plaintiffs subsequently filed a Combined Motion to Amend Judgment and Motion for New Trial (the Motion) pursuant to M. R. Civ. P. 59(a) and (e) on January 4, 2012. The Motion argued that there was insufficient evidence to support the jury's verdict. The Motion largely summarized the evidence the plaintiffs presented at trial and applied these facts to the law contained in the jury instructions. The Motion essentially argued that the plaintiffs supported their contention with a "great quantity" of "uncontroverted" evidence while arguing that the Town only offered evidence of how the plaintiffs spent their days off. As relief, the Motion requested that the court "amend the judgment and rule that the Plaintiffs' time spent while on-call was compensable" and order a new trial to determine damages and the statute of limitations. The Motion alternatively requested that the court order a new trial if it declined

6

to amend the judgment. The court denied the Motion in a February 29, 2012, order, and this appeal followed.

## STANDARD OF REVIEW

¶14 Where the basis of a Rule 59 motion is insufficiency of the evidence, we have clarified that our standard of review is de novo. *Giambra v. Kelsey*, 2007 MT 158, ¶ 26, 338 Mont. 19, 162 P.3d 134. This is because the assessment of the sufficiency of the evidence and the application of the law to that assessment is a question of law that cannot involve discretion. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 19, 336 Mont. 105, 152 P.3d 727. An assessment of the sufficiency of the evidence is a question of law and no deference can be given to the trial court. *Johnson*, ¶ 19. "There either is, or is not, sufficient evidence to convict, and the determination is not a matter of discretion," regardless of whether the appeal is from the denial of a M. R. Civ. P. 59(a) or (e) motion. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511.

¶15 In the course of our review of whether the evidence was sufficient to support the jury's verdict, we do not ask whether the jury made the right decision. *Wise v. Ford Motor Co.*, 284 Mont. 336, 343, 943 P.2d 1310 (1997). Instead, we only ask whether there is substantial credible evidence in the record to support the jury's verdict. *Wise*, 284 Mont. at 343, 943 P.2d at 1314. Substantial credible evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *C. Haydon Ltd. v. Mont. Min. Props., Inc.*, 286 Mont. 138, 151, 951 P.2d 46 (1997). This evidence "may be less than a preponderance of the evidence, but must be more than a 'mere scintilla.' " *Murray v. Whitcraft*, 2012 MT

298, ¶ 7, 367 Mont. 364, 291 P. 3d 587 (quoting *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 11, 363 Mont. 41, 265 P.3d 1230). A jury's verdict may be supported by substantial credible evidence even if it is contradicted by other evidence or inherently weak. *D.R. Four Beat Alliance, LLC v. Sierra Prod. Co.*, 2009 MT 319, ¶ 23, 352 Mont. 435, 218 P.3d 827 (quoting *Tinker v. Mont. State Fund*, 2009 MT 218, ¶ 36, 351 Mont. 305, 211 P.3d 194).

## DISCUSSION

¶16 On appeal, the plaintiffs maintain their argument that substantial evidence did not support the jury's verdict in favor of the Town. The plaintiffs further term the jury's decision "baffling" and "inconsistent" in light of the District Court's decision following our remand as directed in *Sands v. Town of W. Yellowstone*, 2007 MT 110, 337 Mont. 209, 158 P.3d 432. We find both arguments unpersuasive, as outlined below.

## I. SUFFICIENCY OF THE EVIDENCE

¶17 The United State Supreme Court has held that time spent waiting "on call" is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Armour & Co. v. Wantock*, 323 U.S. 126, 132, 65 S. Ct. 165 (1944). "Whether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co.*, 323 U.S. at 133. The key, according to the Court, is whether the employee was engaged to wait, which is compensable, or whether the employee waited to be engaged, which is not compensable. *Skidmore v. Swift & Co.*, 323 U.S. 134, 137-39, 65 S. Ct. 161 (1944). The jury instructions related these holdings. The instructions also listed a variety of factors that courts have found

8

relevant in determining whether on-call time is compensable. These factors included: (1) the extent to which there was an on-premises living requirement; (2) the extent to which there were excessive geographical restrictions on employee movements; (3) the extent to which the frequency of calls was unduly restrictive; (4) the extent to which a fixed time limit for on-call response was unduly restrictive; (5) the extent to which employees could easily trade on-call responsibilities; (6) the extent to which the use of a pager or cell phone could ease restrictions; (7) the duration and danger of calls; (8) the extent to which employees benefitted financially from the on-call policy; (9) the extent to which the policy was based upon an agreement between the parties; and (10) the extent to which on-call employees engaged in personal activities during on-call time. The court instructed that no one factor was dispositive and neither party contests these instructions on appeal. The jury determined that, based on the evidence presented and the applicable legal standards, the plaintiffs' on-call time was not compensable.

¶18    The plaintiffs claim that this verdict was not supported by substantial evidence and that the jury wrongly ignored credible evidence that the on-call time was primarily for the Town's benefit. In support, the plaintiffs largely recount the evidence they offered at trial and apply this evidence to the law contained in the jury instructions. However, "[a] jury's verdict which is challenged as not supported by the evidence may be overturned only in the complete absence of any credible evidence to support the verdict." *Papich v. Quality Life Concepts, Inc.*, 2004 MT 116, ¶ 29, 321 Mont. 156, 91 P.3d 553. As noted, this substantial evidence need be only more than a mere scintilla of evidence, need not be more than a

9

preponderance, and may be based on weak and conflicting evidence. *Campbell v. Canty*, 1998 MT 278, ¶ 18, 291 Mont. 398, 969 P.2d 268. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the adverse party, the Town. *Campbell*, ¶ 19. Essentially, appellants may not use a Rule 59 motion to relitigate their claim and we will not disturb a jury's findings "unless they are inherently impossible to believe." *Wise*, 284 Mont. at 339, 943 P.2d at 1312.

¶19    While we review the sufficiency of the evidence de novo, it is clear from the foregoing that this Court does not invade the province of the jury and weigh the credibility or persuasiveness of the evidence presented. We do not second-guess or seek to replace the jury. We merely determine whether "substantial" evidence—more than a scintilla but perhaps less than a preponderance—supported the jury's verdict. *Campbell*, ¶ 18. Here, that translates to at least *some* evidence that the plaintiffs' time was *not* spent primarily for the benefit of the town, or that the plaintiffs were waiting to be engaged. *Sands*, ¶ 19. The question, then, is not whether substantial evidence supported the *plaintiffs'* contention; rather, it is whether some evidence supported the proposition that the plaintiffs' time was spent primarily for their own benefit. Indeed, under our conception of what constitutes substantial evidence, there may be a scintilla of evidence supporting several contentions. It is for the jury to weigh these competing bits of evidence and determine which is more credible. *See Papich*, ¶ 29; *Campbell*, ¶ 19; *Wise*, 284 Mont. at 339, 943 P.2d at 1312.

¶20    Both sides presented evidence to the jury. The Town called three witnesses, proffered ten exhibits, and elicited testimony through the cross-examination of the plaintiffs and their

10

witnesses. This "substantial" evidence demonstrated that the plaintiffs spent much of their on-call time asleep, eating meals, doing various household chores, or watching movies. Officer Conlon, who was not a plaintiff, testified that his on-call shifts were primarily spent going to movies, going to dinner, and going to bed. The plaintiffs testified that they generally slept and ate meals during their on-call shifts, but also stated their sleep was often interrupted by calls not related to their on-call duty. The Town also presented "substantial" evidence that the officers received few call-outs and were not disciplined in the instances where they missed a call. There was not an on-premises living requirement for the plaintiffs, but former Police Chief William Pronovost did tell Sergeant Stubblefield he could not live outside town if it would inhibit his ability to respond to calls and the plaintiffs generally stayed within West Yellowstone during their on-call shifts. The plaintiffs thought the compensation rate for actual call outs was fair, but wished they would have been called out more. The plaintiffs were apparently able to take vacation and trade shifts but there were some restrictions.

¶21 The jury received evidence from both the Town and the plaintiffs that related to the factors listed in the jury instructions. The Town challenged the plaintiffs' credibility through cross-examination. The jury was free to judge the credibility and persuasiveness of the testimony and evidence submitted. The Town presented more than a mere scintilla of evidence that would support the jury's verdict. The jury's verdict was therefore based on "substantial" evidence. *Campbell*, ¶ 18. The plaintiffs have failed to show that the jury's

11

verdict is either inherently impossible to believe or that there was a complete absence of evidence in support of the verdict. *Campbell*, ¶ 19.

## II. **RELEVANCE OF** *SANDS*

¶22 Plaintiffs also claim that because "[t]his case is a direct descendant of" *Sands v. Town of W. Yellowstone*, 2007 MT 110, 337 Mont. 209, 158 P.3d 432, we must either order the District Court to enter judgment in favor of the plaintiffs or order a new trial. Like the present case, *Sands* dealt with a FLSA claim against the Town of West Yellowstone. Unlike the present case, the plaintiffs prevailed on their FLSA claim after a bench trial. The plaintiffs essentially claim that this success, when coupled with the similarities between the cases, requires us to reverse the court's judgment and the jury's verdict. However, we are not persuaded by plaintiffs' contention that this case is "essentially a retrial" of *Sands*.

¶23 *Sands* dealt with a FLSA claim brought by EMTs against the Town of West Yellowstone in 2003. The plaintiffs contested the 1/4 wages the Town paid for the hours they spent on call but not actually responding to a call. Following a bench trial, the district court entered judgment for the plaintiff EMTs. Some of the factors the district court considered to determine compensability mirror the factors presented to the jury in this case. For example, the *Sands* court considered response time requirements, whether employees could use on-call time for personal pursuits, the frequency and duration of call-outs, and geographic restrictions on employees.

¶24 The district court in *Sands* applied these similar factors to the evidence to determine that the plaintiffs should have been fully compensated for their on-call time. Some of the

facts the court considered in this analysis are similar to the facts in the present case. For instance, the EMTs were paid for their "response" time when they responded to a call, but were not fully compensated for all their on-call hours. The EMTs similarly worked 12-hour on-call shifts and were required to respond within five to seven minutes in uniform. *Sands*, ¶ 7. The *Sands* plaintiffs also testified that the on-call requirements interrupted their sleep and interfered with their ability to run personal errands, travel for services or shopping, or recreate.

¶25 Despite these initial similarities, the *Sands* case is not as "identical" to the present case as the plaintiffs allege. The foremost difference is the fact that the case on remand was conducted as a bench trial. The *Sands* EMTs also operated under a different collective bargaining agreement. *Sands*, ¶ 5. Moreover, if an EMT failed to respond in the required five to seven minute range, they would be disciplined. *Sands*, ¶ 7. Here, there is no evidence that any police officer has ever been disciplined for failing to immediately respond to a call. The *Sands* plaintiffs also testified that trading on-call hours was difficult, if not impossible. Here, the plaintiffs testified that trading shifts was at least possible. Significantly, the *Sands* plaintiffs received call-outs almost 50% of the time they were on call. In the present case, the plaintiffs were rarely called out.

¶26 While *Sands* presented a superficially similar claim, involving EMTs in West Yellowstone seeking compensation for on-call time, the case is not "identical" to the plaintiffs' claim in the present case. The *Sands* plaintiffs worked under a separate agreement, were subject to different response requirements, and received significantly more

13

call outs. In addition, the district court's order in *Sands* was, somewhat surprisingly, admitted into evidence at trial. The jury had an opportunity to compare the *Sands* decision to the present case and they apparently decided that the cases were distinguishable. The jury was free to do this, just as they are free to weigh the persuasiveness of any evidence presented at trial. *See Wise*, 284 Mont. at 339, 943 P.2d at 1312 ("[T]he credibility and weight given to the evidence is in the jury's province and we will not disturb the jury's findings unless they are inherently impossible to believe.").

¶27    It is important to emphasize that our review of an appeal alleging insufficiency of the evidence is confined to a determination of whether substantial evidence supported the jury's verdict. *Campbell*, ¶ 17. If there was evidence that a reasonable mind might accept as adequate to support the jury's conclusion, our review ends. *Campbell*, ¶ 18. A prior district court's determination of an arguably similar case has no bearing on this analysis. The jury was free to consider, and reject, the persuasiveness of the *Sands* decision just as it could consider, and reject, the persuasiveness of the plaintiffs' testimony. Because there was sufficient evidence to support the jury's verdict, we affirm the District Court's denial of the Motion, regardless of *Sands*.

## CONCLUSION

¶28    Because we conclude that there was sufficient evidence to support the jury's verdict in favor of the Town, we affirm.

¶29    Affirmed.

/S/ MICHAEL E WHEAT

14

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE