FILED

September 17 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0159

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 263

JODY BARILE, d/b/a TRIPP AND DRAGSTEDT
APARTMENTS, and JAMES KUSS,

> Plaintiffs and Appellants,

v.

BUTTE HIGH SCHOOL, BUTTE SCHOOL
DISTRICT NO. 1, BUTTE SCHOOL BOARD,

> Defendants,

ATLANTIC RICHFIELD CO., and JOHN DOES 1 through 10,

> Defendants and Appellees.

APPEAL FROM:     District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DV 03-51
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

> For Appellants:

> Bernard J. (Ben) Everett, Everett Law, PLLC, Anaconda, Montana

> Wade J. DaHood, Knight, DaHood, Everett & Sievers, Anaconda, Montana

> For Appellees:

> Robert Cameron, KD Feeback, Gough, Shanahan, Johnson & Waterman, PLLP, Helena, Montana

Submitted on Briefs:   July 31, 2013
Decided:   September 17, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Appellants Jody Barile, d/b/a Tripp and Dragstedt Apartments (Barile), and James Kuss (Kuss), appeal the denial by the Second Judicial District Court, Silver Bow County, of their motion for judgment as a matter of law and their motion for a new trial. We affirm.

¶2    We address the following issues on appeal:

¶3    *Whether the District Court correctly denied Barile's Rule 50 motion for judgment as a matter of law.*

¶4    *Whether the District Court correctly denied Barile's Rule 59 motion for a new trial.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    The Tripp and Dragstedt Apartments are located in uptown Butte, Montana. The historical building sits immediately to the west of Butte High School. The building, originally constructed in 1916, was the largest apartment house between St. Paul and Spokane when it was built. The Tripp and Dragstedt Apartments remains Butte's largest apartment house. The five story brick building houses 36 apartment units plus a penthouse apartment.

¶6    Barile purchased the Tripp and Dragstedt Apartments from the McGree Corporation in 1997. Barile worked with Kuss to restore and remodel the apartment building. Barile and Kuss noticed hairline cracks that started to appear in the building's exterior brick structure in the early 2000s.

¶7    Butte grew up around mining. The honeycomb of mining tunnels that uncoil beneath the city serve as a living proof of Butte's mining heritage. Underground mining in the

vicinity of the Tripp and Dragstedt Apartments first began in the 1890s with the Travona Mine and the Emma Mine. Of the two mines, the Emma Mine was closer to the current location of the apartment building.

¶8 The Butte Copper & Zinc Mining Company originally owned the Emma Mine. The company began leasing the mine to the Anaconda Copper Mining Company (ACM) in 1942. Mining in the Emma ceased in the 1950s. ACM permanently closed the Emma in 1959 as part of its transition to open pit mining operations at the Berkeley Pit. ACM flooded the Emma's tunnels with groundwater after the closure.

¶9 Removal of underground material led to various amounts of surface subsidence during underground mining in many areas in Butte. ACM monitored material removed from underground mines and concurrent subsidence of the surface. Mining-related surface subsidence caused incremental settlement of the Tripp and Dragstedt Apartments. The land around the Tripp and Dragstedt Apartments subsided approximately two feet primarily during the 1940s until the mid-1960s. As a result, the building tilted to the southwest approximately 24 inches. ACM paid numerous claims for damage to buildings and structures in Butte caused by mining-related subsidence. ACM paid no claims for damage to the Tripp and Dragstedt Apartments.

¶10 The Atlantic Richfield Company (ARCO) purchased ACM in 1977. ARCO's purchase included all of ACM's liabilities. These liabilities came to include claims for property damage caused by mining-related surface subsidence.

¶11 Barile filed an initial complaint in 2003 against Butte High School, Butte School District No. 1, and the Butte School Board (School defendants). Barile alleged that construction of a gymnasium, parking lot, and alley at Butte High School in the 1980s-1990s had caused harm to and deterioration of the Tripp and Dragstedt Apartments. Barile alleged that the Tripp and Dragstedt Apartments received no exposure to sunlight and that the construction activities at Butte High School had deteriorated severely the historic bricks.

¶12 Barile and Kuss added ARCO and Montana Resources, Inc. (MRI) to an amended complaint in 2005 in which they alleged that mining-related subsidence had caused the current damage to the Tripp and Dragstedt Apartments. The amended complaint described the damage as cracking in the exterior brick of the building. Barile also asserted in the amended complaint that the School defendants were liable for having undertaken construction activities in a known subsidence zone. Barile settled with the School defendants. The District Court later dismissed MRI as a party.

¶13 The case against ARCO proceeded to trial. Barile and Kuss claimed that the replacement cost of the Tripp and Dragstedt Apartments would fall between $9,450,000 and $11 million. Barile moved for a judgment as a matter of law at the close of trial on the following issues: (1) that the Tripp and Dragstedt Apartments had been damaged by mining-related subsidence, (2) that no evidence existed of a superseding intervening cause of the current damage to the Tripp and Dragstedt Apartments, and (3) that the replacement cost of $225 to $275 per square foot represents the market value of the loss to the Tripp and Dragstedt Apartments. The District Court denied the motions.

4

¶14 Barile offered a general verdict form. The District Court refused the general verdict form and instead submitted a special verdict form to the jury. The special verdict's first question asked whether mining subsidence had caused the current damage to the Tripp and Dragstedt Apartments. The jury did not have to answer subsequent questions if it answered "no" to this first question. The jury determined, by an 11-1 vote, that mining-related subsidence had not caused the current damage to the apartment building.

¶15 Barile filed a motion pursuant to M. R. Civ. P. 50, for judgment as a matter of law, and a separate motion pursuant to M. R. Civ. P. 59, for a new trial. The District Court failed to rule on these motions within 60 days, and, thus, both were deemed denied pursuant M. R. Civ. P. 50(b) and M. R. Civ. P. 59(f).

## STANDARD OF REVIEW

¶16 We review de novo a district court's grant or denial of a motion for judgment as a matter of law. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. We also review de novo a Rule 59 motion where the alleged insufficiency of the evidence provides the basis for the motion. *Stubblefield v. Town of W. Yellowstone*, 2013 MT 78, ¶ 14, 369 Mont. 322, 298 P.3d 419, citing *Giambra v. Kelsey*, 2007 MT 158, ¶ 26, 338 Mont. 19, 162 P.3d 134.

## DISCUSSION

¶17 *Whether the District Court correctly denied Barile's Rule 50 motion for judgment as a matter of law.*

¶18 Barile and Kuss claim that no evidence exists to show that anything but mining-related subsidence could have caused the current damage to the Tripp and Dragstedt Apartments. They cite to the testimony of four witnesses at trial as uncontroverted proof that mining-related subsidence directly caused the damage to the building, namely the cracks in the exterior brick structure. Two of these witnesses were Barile's experts, geotechnical engineer Douglas Chandler (Chandler) and structural engineer John Schlegelmilch. ARCO presented two expert witnesses: geotechnical and engineering geologist Raymond Womack (Womack) and mining engineer Allen Winters (Winters).

¶19 We have held that a court should grant judgment as a matter of law "only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from the evidence must be considered in the light most favorable to the party opposing the motion." *Johnson*, ¶ 13 (citations omitted). If reasonable persons could differ regarding conclusions that could be drawn from the evidence, judgment as a matter of law is not proper. *Johnson*, ¶ 13, citing *Kearney v. KXLF Communications, Inc.*, 263 Mont. 407, 417, 869 P.2d 772, 777-78 (1994).

¶20 The District Court issued an *Order Re Surface Subsidence* before the trial to which the parties stipulated. The order provides:

> In accord with the stipulation of the parties, litigation regarding surface subsidence shall proceed as follows:
> 1. Underground miners and their successors have a duty to avoid surface subsidence. Arco is a successor to the entity which mined under the site of the Tripp and Dragstedt Apartments. Arco has a duty to avoid surface subsidence.
> 2. Surface subsidence has occurred at the site of the Tripp and Dragstedt

6

Apartments. The duty has been breached.
3. Plaintiffs must prove that surface subsidence caused the damages which they allege. Defendants may defend against causation, including the opportunity to present proof of intervening and superceding causes.
4. Plaintiffs must prove the amount of the alleged damages. Defendants may defend against the claimed damages.

¶21 The parties clearly agreed that mining-related subsidence had occurred on the site of the Tripp and Dragstedt Apartments. The dispute to be resolved at trial involved whether the mining-related surface subsidence had caused the specific damages to the Tripp and Dragstedt Apartments that Barile and Kuss had alleged in their amended complaint. ARCO's defense focused on whether the damage to the Tripp and Dragstedt Apartments related to intervening and superseding causes. As the order indicates, Barile and Kuss had the burden to prove that mining-related surface subsidence had caused the specific damage that they alleged.

¶22 Barile and Kuss contend that the evidence presented at trial affirmatively established the third element of the *Order Re Surface Subsidence*. ARCO counters that it provided contradictory evidence through the testimony of Winters. Winters readily admitted that mining-related subsidence had affected the Tripp and Dragstedt Apartments. This admission by Winters mirrors the language in the *Order Re Surface Subsidence*. The rest of Winters's testimony clarifies, however, that he does not necessarily associate mining-related subsidence with the *current* disputed damage to the Tripp and Dragstedt Apartments—the cracks in the exterior brick structure. In fact, Winters indicates the opposite in his testimony. Winters noted that historically mining-related subsidence has caused the Tripp and

7

Dragstedt Apartments to settle to the southwest, but the building currently appears to be settling in the opposite direction toward the northeast. Winters opined that other factors have caused more recent movements or settlements under the apartment building.

¶23 Barile and Kuss presented expert witnesses who disagreed with Winters's opinion. Winters's testimony, standing on its own, however, demonstrates that there was not a "complete absence of any evidence which would justify submitting [this] issue to [the] jury." *Johnson*, ¶ 13. Winters holds a mining engineering degree and a master's degree in geological engineering. These credentials made it reasonable for the jury to have found Winters to be reliable and credible. Other expert witnesses may have testified that mining-related subsidence caused the current damage to the Tripp and Dragstedt Apartments. Juries remain free, however, to disregard opinion testimony of experts. *Magart v. Schank*, 2000 MT 279, ¶ 10, 302 Mont. 151, 13 P.3d 390.

¶24 ARCO also presented other possible causes for the damage to the Tripp and Dragstedt Apartments. ARCO posited that the infiltration of water into the clay-rich sub-grade ground under the building had caused the building to settle. Barile's expert witness Chandler testified that large quantities of water, likely from broken water pipes from the City of Butte's water system, sit 15 feet below the Tripp and Dragstedt Apartments. Womack testified for ARCO that water below the Tripp and Dragstedt Apartments has weakened the ground on which the building sits and has caused the building to settle. The City of Butte's water supply system suffered from leaky delivery systems for many years. This Court's

decision in *McDonald v. Washington*, 261 Mont. 392, 862 P.2d 1150 (1993), describes the problems associated with the water system.

¶25    ARCO underscored Kuss's deposition testimony that the Tripp and Dragstedt Apartments had "rocked and rolled" during the construction of Butte High School's parking lot to highlight to the jury the fact that construction activities at Butte High School may have caused the current damage to the apartments.  The jury also heard Kuss's deposition testimony that during the construction at Butte High School there were "pictures falling off of people's walls, fluorescent light covers in the hallway were coming down.  People's dishes were coming out of their cabinets, kitchen cabinets."  ARCO further cross-examined Barile and Kuss regarding the former lawsuit against the School defendants.  Barile and Kuss conceded that they had alleged that construction activities at Butte High School in the late 1990s had caused damage to the Tripp and Dragstedt Apartments.

¶26    As this testimony indicates, ARCO produced sufficient evidence to cast doubt in a juror's mind as to whether mining-related subsidence actually had caused the current damage alleged by Barile and Kuss.  Reasonable persons could find that factors other than mining-related subsidence had caused the current damage to the Tripp and Dragstedt Apartments.  The testimony of Winters, the other experts, and Barile and Kuss demonstrate that there was not "a complete absence of any evidence which would justify submitting an issue to a jury." *Johnson*, ¶ 13.  The District Court properly denied Barile and Kuss's motion for judgment as a matter of law as ARCO's evidence was not so lacking "that a reasonable jury would not

9

have a legally sufficient evidentiary basis to find for the party on that issue." M. R. Civ. P. 50 (a)(1).

¶27 Barile argues in the alternative, that ARCO presented no substantial credible evidence to support submitting to the jury the issue of whether there existed a superseding intervening cause of damage to the Tripp and Dragstedt Apartments. The second question on the special verdict form asked the jury whether an intervening superseding cause had cut off ARCO's liability. The jury never reached this question because they answered "no" to the special verdict form's first question regarding whether mining subsidence had caused the current damage to the Tripp and Dragstedt Apartments. Where "the jury did not consider the issue of intervening cause in reaching its verdict, we conclude that the District Court's instructions on intervening cause had no effect on the outcome of the trial." *Pula v. State*, 2002 MT 9, ¶ 34, 308 Mont. 122, 40 P.3d 364.

¶28 *Whether the District Court correctly denied Barile's Rule 59 motion for a new trial.*

¶29 Barile and Kuss argued in support of the Rule 59 motion that no substantial credible evidence supported the jury's verdict. We do not ask whether the jury made the right decision when we review whether sufficient evidence supports a jury's verdict. *Stubblefield*, ¶ 15, citing *Wise v. Ford Motor Co.*, 284 Mont. 336, 343, 943 P.2d 1310, 1314 (1997). We ask instead whether substantial credible evidence in the record supports the jury's verdict. *Stubblefield*, ¶ 15, citing *Wise*, 284 Mont. at 343, 943 P.2d at 1314.

¶30 Evidence qualifies as substantial and credible if a reasonable mind might accept it as adequate to support a conclusion. *Stubblefield*, ¶ 15, citing *C. Haydon Ltd. v. Mont. Min.*

10

*Props., Inc.*, 286 Mont. 138, 151, 951 P.2d 46, 54 (1997).  Substantial credible evidence may support a jury's verdict even if other evidence contradicts it or the evidence is inherently weak. *Stubblefield*, ¶ 15, citing *D.R. Four Beat Alliance, LLC v. Sierra Prod. Co.*, 2009 MT 319, ¶ 23, 352 Mont. 435, 218 P.3d 827.  We must review all evidence and draw all inferences in a light most favorable to the non-moving party.  *Stubblefield*, ¶ 18, citing *Campbell v. Canty*, 1998 MT 278, ¶ 19, 291 Mont. 398, 969 P.2d 268.

¶31    ARCO disputed the claim that mining-related subsidence had caused the current damage to the Tripp and Dragstedt Apartments.  The testimony of Winters, other experts' testimony about the probable water infiltration, and Barile's and Kuss's testimony regarding damage associated with construction activities at Butte High School undermine the claim by Barile and Kuss that unequivocal evidence exists that mining-related subsidence has caused the current damage to the Tripp and Dragstedt Apartments.  ARCO provided sufficient evidence that could have sown seeds of doubt in jurors' minds whether the current damage actually had been caused by mining-related subsidence. *Stubblefield*, ¶ 15, citing *Wise*, 284 Mont. at 343, 943 P.2d at 1314.

¶32    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER

11

/S/ JIM RICE