DA 16-0140

FILED

02/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 43N

LAWRENCE SLATE,

　　　　Plaintiff and Appellant,

　　v.

BOZEMAN DEACONESS HEALTH
SERVICES, Individually and d/b/a
Bozeman Deaconess Hospital,

　　　　Defendant and Appellee.

APPEAL FROM:　　District Court of the Eighteenth Judicial District,
　　　　　　　　In and For the County of Gallatin, Cause No. DV-13-585C
　　　　　　　　Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　E. Casey Magan, Russell S. Waddell, Waddell & Magan, Bozeman,
　　　　　　Montana

　　　　For Appellee:

　　　　　　Cynthia L. Walker, Emma R. Peckinpaugh, Poore, Roth, & Robinson,
　　　　　　P.C., Butte, Montana

Submitted on Briefs:　December 21, 2016

Decided:　February 28, 2017

Filed:

_____
　　　　　　　　Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Lawrence Slate (Slate) appeals from a jury verdict finding he was not wrongfully discharged from Bozeman Deaconess Health Services (BDHS) under the Wrongful Discharge from Employment Act (WDEA). He submits for review six issues on appeal, which we restate as follows:

*1. Whether the District Court erred by denying Slate's motion for a new trial that was premised on a lack of evidence to support the jury's verdict.*

*2. Whether the District Court erred by admitting an exhibit under an exception to the rule against hearsay.*

*3. Whether the District Court erred by refusing to call a mistrial after defense counsel impeached Slate on the basis of juror statements made during* voir dire.

*4. Whether the District Court erred in admitting the testimony of a witness whose testimony before the jury differed slightly from his* voir dire *testimony.*

*5. Whether the District Court erred in refusing a new trial on the basis two jurors provided misleading information in their juror questionnaires.*

*6. Whether the District Court erred in granting summary judgment to the defense on the basis Slate's claim for emotional distress was preempted by the WDEA.*

¶3 We affirm.

¶4 We address first a procedural matter: the general compliance with our Rules of Appellate Procedure. Collectively, the rules require that an appellant's principal brief not

2

exceed 10,000 words (M. R. App. P. 11(4)(a)) and that it contain an argument comprising the "contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on" (M. R. App. P. 12(1)(g)). BDHS objects to Appellant's opening brief because it exceeds 10,000 words and because it does not include arguments for issues (5) and (6), but rather incorporates arguments Slate made in the District Court.

¶5 The Montana Rules of Appellate Procedure are not guidelines. They are rules by which attorneys must abide when litigating an appeal. When each brief is submitted to the Court, the submitting attorney must include a certificate of compliance pursuant to M. R. App. P. 11(4)(e), affirming that the brief complies with the word count limitations of 11(4)(a). Although the Appellant's brief included such a certificate of compliance, BDHS is correct that Appellant's opening brief exceeds 10,000 words by 264 words, which violates M. R. App. P. 11(4)(a). Regardless of this violation, we considered the Appellant's brief. However, we find Appellant's attempt to incorporate an argument by reference dispositive of our consideration regarding issues (5) and (6). Incorporation by reference of an argument made in the district court is impermissible under M. R. App. P. 11(4)(a) and 12(1)(g). We examined this very issue in *State v. Ferguson*, where we concluded the appellate rules "unquestionably preclud[e] parties from incorporating trial briefs or any other kind of argument into appellate briefs by mere reference." 2005 MT 343, ¶ 41, 330 Mont. 103, 126 P.3d 463. For issues (5) and (6), Slate "relies on and incorporates by reference" his arguments made before the District Court in briefs, "documents filed under seal," hearings, and motions to substantiate his appeal. Appellate

3

arguments must be contained within the appellate brief. *Ferguson*, ¶ 41. To allow otherwise would unfairly advantage litigants who incorporate by reference, enabling them to circumvent and undermine the word count requirements of M. R. App. P. 11(4)(a) instead of seeking permission to file an over-length brief pursuant to M. R. App. P. 12(10). *Ferguson*, ¶ 42. Although this Court examines the district court's record as a matter of course, to verify the facts of a case and ensure arguments were properly preserved on appeal, we will not examine the record to ascertain a party's contentions. *Ferguson*, ¶ 43.

¶6 Here, Slate submitted no arguments in his opening brief for issues (5) and (6), choosing instead to incorporate the District Court record by reference. To the extent he raises arguments for these issues in his reply brief, to address opposing counsel's objections to his incorporation tactic, these arguments are not well-taken. Again, the rules of appellate procedure preclude such a maneuver, as reply briefs must be "confined to new matter raised in the brief of the appellee." M. R. App. P 12(3). Accordingly, we will not consider issues (5) and (6).

¶7 We address the Appellant's remaining issues below.

¶8 BDHS employed Slate as a medical physicist and radiation officer from 2009 until his termination in 2013. These professions are high-paying positions, but with limited availability, as they are typically concentrated in cancer specialty centers. Slate's duties at BDHS required him to oversee radiation treatment plans for patients, ensure adequate patient and staff safety measures were employed around the radioactive materials used at the facility, and work with the Nuclear Regulatory Commission (NRC) to ensure the

4

facility's compliance with federal nuclear regulations. To these ends, he worked with other health service professionals employed by BDHS—physicians and therapists—and with NRC commissioners. His work with the BDHS professionals was collaborative, but his duties to the NRC required him to report compliance violations to NRC commissioners, regardless of whether other employees or facility administrators agreed.

¶9 Slate was familiar with NRC regulations and inspectors. He regularly dealt with them throughout his profession. Slate's termination from BDHS rested in part on an incident where he inappropriately communicated with an NRC inspector by leaving a message on the inspector's phone, telling him to "get off his fat ass and answer his phone." Additional witness testimony suggests Slate may have used even more severe profanity in his messages to this inspector, including "f--k". BDHS disciplined Slate by having him sign a written, final warning, which cautioned him that any future inappropriate behavior would result in his immediate termination. Following this warning, BDHS formally counseled Slate, without terminating him, for other incidents that BDHS perceived as contributing to a hostile work environment.

¶10 BDHS terminated Slate when its human resources department received a complaint from Slate's colleague, K.C. K.C. was married and had children. Slate had recently divorced. K.C. was new to BDHS and felt pressured to be friendly with Slate as she often worked with him closely and Slate was friends with her supervising radiologist. Slate and K.C. had exchanged a series of text messages and in-person conversations in which K.C. had agreed to act as a matchmaker for Slate. In the course of their exchanges, Slate learned that K.C. had an irrational fear of snakes. K.C. complained to

5

BDHS human resources of her exchanges and text messages with Slate after Slate sent her a picture of a large snake sloughing its own skin with its mouth, appearing to consume itself. Slate's comments accompanying the picture implicitly threatened to expose her to snakes if she did not quickly find him a match, and stated that he was "not sure how much more [his] libido can hold out."

¶11 Although BDHS had a conflict resolution process for resolving personnel issues, K.C. was not required to use it. The formal complaint she filed instead outlined not only Slate's text messages, but also Slate's multiple visits to her office, where he informed her of his sexual adventures, and suggested she have sex with her husband on her husband's birthday. The subsequent BDHS human resources department investigation substantiated her allegations, and formed the basis of its cause to terminate Slate's employment with the organization. Slate filed suit, alleging his termination was without good cause, was in violation of Montana's Wrongful Discharge from Employment Act, and was really in retaliation for him reporting BDHS radiation safety violations to NRC inspectors.

¶12 We review de novo a Rule 59 motion for a new trial premised on insufficiency of the evidence. *Stubblefield v. Town of W. Yellowstone*, 2013 MT 78, ¶ 14, 369 Mont. 322, 298 P.3d 419. In determining the sufficiency of the evidence, we ask only whether the jury's verdict was supported by substantial credible evidence in the record. Substantial credible evidence is more than a mere scintilla, but less than a preponderance, and must be sufficient for a reasonable mind to accept as adequate support for a conclusion. Sufficient credible evidence may exist even if it is contradicted or weak. *Stubblefield*, ¶ 15. To avoid invading the province of the jury, we will not weigh the credibility or

6

persuasiveness of the evidence during a sufficiency review. *Stubblefield*, ¶ 19. Here, the jury heard testimony and saw evidence that Slate used profanity with NRC regulators. Additional evidence showed that the BDHS human resources department cautioned Slate that further problems from him would be grounds for dismissal. Other testimony revealed that despite that warning, Slate discussed sex with his co-worker and sent her text messages referencing his libido and evoking her fear of snakes. We find this evidence to be more than a scintilla of evidence and clearly sufficient for a reasonable mind to conclude that BDHS had good cause to terminate Slate's employment. The District Court's denial of a motion for a new trial on the basis that the jury's verdict lacked substantial credible evidence is affirmed.

¶13 At trial, the District Court admitted defense exhibit 518, a seven-page document regarding Slate's internet usage in 2011, prepared by BDHS's former IT Director Lester Jerome (Jerome). BDHS's manager, Spencer Green (Green), laid the foundation for the exhibit in Jerome's absence, over Slate's objection on hearsay grounds. Green testified that Jerome brought the document to Green's office following a phone call, to discuss an employee's internet use, and that documents such as this often came to his attention as a supervisor. Green met with Jerome to discuss the report, where Green made concomitant notes on the report. At trial, Slate objected to the document's admission on grounds of hearsay and insufficient foundation. The District Court admitted the document over Slate's objections because the document was prepared by Jerome in the course of his duties as the IT Director; and because Green relied on it in making his decisions. Slate

argues on appeal that the document's admission violated his right to confront witnesses under M. R. Evid. 611(e). We disagree.

¶14 We review a district court's evidentiary rulings for an abuse of discretion, which occurs if it acts arbitrarily without employment of conscientious judgment, or if it exceeds the bounds of reason and substantial injustice results. *Byrum v. Andren*, 2007 MT 107, ¶ 15, 337 Mont. 167, 159 P.3d 1062. In civil cases, the confrontation right is subject to exceptions provided by rules and statute. *In re T. W.*, 2006 MT 153, ¶ 14, 332 Mont. 454, 139 P.3d 810. Particularly, "if an exception within the rules of evidence applies to a hearsay statement, pursuant to Rule 611(e), M. R. Evid., Montana courts permit the testimony in a civil case." *In re T. W.*, ¶ 14.

¶15 Here, the District Court made findings that conclusively indicated the document was subject to the business records hearsay exception of M. R. Evid. 803(6). The relevant portions of M. R. Evid. 803(6) exclude from hearsay a "report . . . made at or near the time of . . . opinions . . ., if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . report . . ., all as shown by the testimony of [a] qualified witness[.]" The court found the document was prepared by Jerome in the course of his duties as IT director; that Green relied on this report to make his decisions; and the court heard Green testify that such documents were often brought to his attention as supervisor. The evidence before the District Court sufficiently conformed with the provisions of M. R. Evid. 803(6), leading us to conclude the court's admission of the report was not arbitrary, without conscientious judgment or outside the bounds of reason.

¶16 During defense counsel's cross-examination of Slate, Slate stated that there were no medical physicist jobs in Gallatin County. To impeach him, defense counsel asked Slate if he remembered one of the jurors talk about a Radiation Safety Officer position at Montana State University. The District Court sustained Slate's counsel's immediate objection and struck the question. Later that day, Slate moved for a mistrial based on that exchange, but the court denied it, ruling the error was adequately addressed by striking the question and that any error was harmless error as it addressed only mitigation, not liability.

¶17 We review a district court's denial of a motion for a mistrial for a manifest abuse of discretion. A manifest abuse of discretion is obvious, evident, or unmistakable, and significant enough to materially affect the substantial rights of the complaining party. A district court's denial of a mistrial must be based on whether the moving party was denied a fair and impartial trial. We will not lightly disturb the district court's determination to deny a mistrial, as the district court is in the best position to determine the prejudicial effect of attorney misconduct on the jury. *O'Connor v. George*, 2015 MT 274, ¶ 17, 381 Mont. 127, 357 P.3d 323.

¶18 From the record, we cannot say that the court's denial was a manifest abuse of discretion. Since the court sustained the objection and struck the question, Slate has not demonstrated that he was denied a fair and impartial trial. We agree with the District Court that even if there was error, it went only to the issue of mitigation, and not liability. Since the jury's verdict found no liability for BDHS, the issue of mitigation is moot.

¶19     Slate argues the District Court erred in admitting the testimony of Roy Caniano (Caniano), a regional director for the NRC. Slate's counsel at trial conducted a brief *voir dire* of Caniano outside the presence of the jury, in part to ask him whether he had a clear memory of Slate using "f--k" when he left a message for an NRC regulator. In *voir dire*, Caniano indicated that he did not, but during direct examination by BDHS counsel, Caniano's best recollection was that he did remember Slate using "f--k." Slate's argument on appeal is that Caniano's inconsistent statement violated M. R. Evid. 601(b)(2) and 602. We are not persuaded.

¶20     We review a district court's evidentiary rulings for an abuse of discretion, which occurs if it acts arbitrarily without employment of conscientious judgment, or if it exceeds the bounds of reason, and substantial injustice results. *Byrum*, ¶ 15. M. R. Evid. 601(b)(2) provides that a person is disqualified to be a witness if the court finds he is incapable of understanding the duty of a witness to tell the truth. Appellant's counsel does not cite to any part of the record that indicates Caniano was incapable of understanding the duty of a witness to tell the truth. Neither do we find such evidence in the record upon our own review. M. R. Evid. 602 provides that a witness may not testify to a matter unless evidence is introduced to support a finding the witness had personal knowledge of the matter. Under the rule, sufficient evidence may consist of the witness's own testimony. At trial, Caniano testified to personally hearing the message Slate left for the NRC regulator. Caniano's own testimony was sufficient under the rule to support a finding that he had personal knowledge of what profanity Slate used. The District Court did not exceed the bounds of reason or act arbitrarily by admitting his testimony.

10

¶21    Slate's appeal on all issues is denied.  The ruling of the District Court is affirmed.

¶22    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.


                                        /S/ LAURIE McKINNON


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE